INTEGRATED SOLUTIONS,
INC., Plaintiff,

v.

SERVICE SUPPORT SPECIALTIES,
INC., et al., Defendants.

Civ. A. No. 94–4953(JCL).

United States District Court,
D. New Jersey.

March 11, 1996.

Susan Stryker, Sterns & Weinroth, Trenton, NJ, for Plaintiff.

John P. Leon, Horn, Goldberg, Gorny, Daniels, Plackter & Weiss, Voorhees, NJ, Andrew P. Napolitano, Robinson, St. John & Wayne, Newark, NJ, Michael M. Rosenbaum, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, P.C., Short Hills, NJ, for Defendants.

## OPINION

LIFLAND, District Judge.

Service Support Specialties, Inc., Gary Hillman, Paul Sherman, Joseph O'Neill and Aaron Cruise (hereinafter "the SSSI defendants") move for partial summary judgment dismissing Counts One through Seven of Integrated Solutions, Inc's ("ISI") Amended Complaint.[1] Resolution of the motion hinges on whether ISI has standing as the assignee of the causes of action of the now bankrupt company, Machine Technology, Inc. ("MTI").

The Court holds that plaintiff does have standing to pursue Count One of the Amended Complaint, the copyright claim, which was freely assignable to ISI as a matter of federal law. However, ISI does not have standing to pursue the state law causes of action since the bankruptcy trustee's assignment of these claims was *void ab initio* under New Jersey law. The Court therefore grants partial summary judgment dismissing Counts Two through Seven of the Amended Complaint.

### Background

ISI manufactures, sells and services photolithography equipment used by the computer industry. Defendant SSSI also manufactures, sells and services photo-lithography equipment. The individual defendants are SSSI officers or employees. *Amended Complaint* at ¶¶ 1–6.

On September 6, 1994, plaintiff purchased certain assets of MTI through secured creditors. MTI designed and assembled semiconductor equipment and provided service and spare parts. *Supplemental Affidavit Of Gary Hillman.* The individual defendants are former MTI employees and/or officers or directors. *Amended Complaint* at ¶ 14. Before it ceased operations on July 29, 1994, MTI had financed its operations through loans from Midlantic Bank ("Midlantic") and United Jersey Bank ("UJB"). These loans were restructured several times since financing began in 1981, and were last restructured in an Amended and Restated Credit Agreement dated December 10, 1992. The debt was secured by separate Security Agreements in assets such as accounts, inventory, machinery and equipment. *Affidavit of Henry White.*

In June 1994, Midlantic and UJB declared MTI's loan in default and accelerated all amounts due. On July 22, 1994, MTI filed for relief under chapter 11. *Certification of Susan Stryker In Support of Plaintiff's Supplemental Memorandum And Application for Preliminary Injunctive Relief,* Exhibit A. Plaintiff alleges that on August 1 and 2, 1994, individual defendants Cruise, Sherman and Hillman entered MTI's offices, accessed MTI's computers, and downloaded allegedly proprietary information. Defendants acknowledge that they entered MTI's offices and took or copied various MTI documents, diagrams, specifications and drawings. *Affidavit of Joseph O'Neill; Certification of L. Aaron Cruise.* On August 3, 1994, SSSI was incorporated. On August 8, 1994, SSSI opened for business and began servicing MTI accounts until September 6, 1994, when ISI bought certain MTI assets. *Affidavit of Gary Hillman.*

On October 20, 1994, plaintiffs filed a complaint in this court alleging unfair competition, breach of the duty of loyalty, misappropriation of confidential information, interference with contractual relations, conversion, replevin and copyright infringement. Specifically, plaintiff alleges that defendants misappropriated MTI assets, including computer programs, design drawings, customer lists, and inventory reports, used these assets to set up SSSI, and are now unlawfully competing with plaintiff. *Amended Complaint* ¶ 18. Plaintiff also sought preliminary injunctive relief enjoining defendants from destroying and concealing documents and information,

---

**1.** These seven counts constitute the entirety of the claims against the SSSI defendants.

utilizing what plaintiff characterizes as confidential commercial information, infringing on ISI copyrights, and engaging in acts of unfair competition during the pendency of the action.

On March 15, 1995, this Court denied ISI's application for a preliminary injunction because ISI was not "a successor in interest to MTI, did not purchase all general intangibles of MTI, and thus [had] no standing to assert claims which MTI might have had against defendants for misappropriation of confidential information." *Slip op.* at 9. Plaintiff could not, therefore, demonstrate a likelihood of success on the merits.

ISI has since purchased all of MTI's remaining assets from the bankruptcy trustee by Bill of Sale executed on August 21, 1995. According to the Bill of Sale, plaintiff purchased, *inter alia,* all general intangibles, all intellectual property, and "[a]ll claims and causes of action, including the right to recover for any past and future damages, arising out of or relating to the Assets. . . ." *Posta Certification,* Exhibit B.[2] The SSSI defendants were aware of the sale in bankruptcy and unsuccessfully bid for a non-exclusive license to use MTI's technology. *Def's Letter Brief (11/7/95),* Exhibit A.

### Discussion

Summary judgment is not a disfavored procedural shortcut, but rather an essential thread in the fabric of the Federal Rules that eliminates unfounded claims without recourse to a costly and lengthy trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *See Goodman v. Mead Johnson*

& Co., 534 F.2d 566, 573 (3d Cir.1976), *cert.* denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). "This burden . . . may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. at 2554. All evidence submitted must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment is appropriate on this record since the material facts are undisputed.

According to plaintiff, its recent purchase of all intangible property, including tort causes of action, possessed by the bankruptcy estate cures the defect this Court found when it denied ISI preliminary injunctive relief in March 1995. Defendants respond that ISI's attempt essentially to purchase standing in this case fails because New Jersey public policy prohibits assignment before judgment of business and personal injury tort claims. Plaintiff responds that this policy conflicts with, and is preempted by, federal bankruptcy law.

### Improper Collateral Attack on Bankruptcy Court Order?

■ These arguments present difficult questions involving the proper interaction of federal and state law in the bankruptcy context. But before addressing them, the Court digresses to examine a threshold issue ISI raises in response to defendants' summary judgment motion—that defendants' argument regarding the non-assignability of tort causes of action is tantamount to a collateral attack on the bankruptcy court's Order approving the sale of MTI's assets.[3] Since the SSSI defendants unsuccessfully bid for a non-exclusive license to use MTI's technology, and did not appeal the bankruptcy court's final order,[4] plaintiff argues that defendants may not now attack that decision. This argument erroneously assumes defendants had

---

2. Bankruptcy Judge Winfield authorized and approved the private sale of assets by the trustee to ISI. *Posta Certification,* Exhibit A.

3. The order specifically stated that the trustee had "the authority to sell the Assets." *Posta Certification,* Exhibit A.

4. The bankruptcy court's approval of the trustee's private sale of MTI's assets was a final and appealable order within the meaning of 28 U.S.C. § 158(a).

standing to appeal the bankruptcy court's order.

■■■ The bankruptcy appeals standing requirement is narrower than Article III's "case or controversy" requirement, which "need not be financial and need only be 'fairly traceable' to the alleged illegal action." *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 642 n. 2 (2d Cir.1988) (citations omitted). As the Third Circuit recently explained, bankruptcy standing inheres only in persons aggrieved by an order of the bankruptcy court,[5] a limitation that:

> "exists to fill the need for an explicit limitation on standing to appeal in bankruptcy proceedings. This need springs from the nature of bankruptcy litigation which almost always involves the interests of persons who are not formally parties to the litigation. In the course of administration of the bankruptcy estate disputes arise in which numerous persons are to some degree interested. Efficient judicial administration requires that appellate review be limited to those persons whose interests are directly affected."

*Travelers Ins. Co. v. H.K. Porter Co., Inc.*, 45 F.3d 737, 741 (3d Cir.1995) (quoting *Matter of Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983)). Standing is denied to parties not directly affected by the order, but rather impacted only marginally or tenuously. A party has standing if the challenged order "diminishes their property, increases their burdens, or impairs their rights." *In re Dykes*, 10 F.3d 184, 187 (3d Cir.1993).

The SSSI defendants would not likely have had standing to challenge the bankruptcy court's order approving the sale of MTI's intangible assets. Although the sale to ISI exposed defendants to the risk of being named a defendant in future litigation—a risk that indeed has come to pass—any financial exposure is contingent upon ISI prevailing in the litigation. Thus, the SSSI defendants are in a position analogous to the appellant in *Travelers*. In that case, the plaintiff-insurer appealed an order of the bankruptcy court granting the motion to vacate the withdrawal of certain creditors who had asbestos-related claims against the bankrupt defendant-insured. The court held that Travelers lacked standing to appeal because it was not a "person aggrieved" by the order since its "potential exposure [was] doubly removed, turning both on the success of the claimants against Porter, and on a judicial determination that the policy issued by Travelers cover[ed] the claims, a construction which Travelers strenuously reject[ed]." *Travelers*, 45 F.3d at 743.

By a parity of reasoning, the risk confronted by defendants as a result of the bankruptcy court's order does not constitute a direct diminution of, or burden on, property, or an impairment of rights sufficient to have conferred standing to appeal upon the SSSI defendants. *See id.* Accordingly, their challenge in this proceeding to the legality of that order is not an improper collateral attack because they had no other forum in which to attack the court's approval of the sale of tort causes of action.

**Does ISI Have Standing to Bring this Action?**

■■■ Having dispensed with plaintiff's collateral attack argument, the Court now examines defendants' position regarding the non-assignability of the tort claims being litigated in this suit. It is well settled that New Jersey public policy prohibits assignment before judgment of business and personal injury tort claims. *See, e.g., Costanzo v. Costanzo*, 248 N.J.Super. 116, 121, 590 A.2d 268 (Law Div.1991) ("A tort claim is a chose in action and at first blush it would appear to be assignable. But in New Jersey, as a matter of public policy, a tort claim cannot be assigned."); *East Orange Lumber Co. v. Feiganspan*, 120 N.J.L. 410, 413, 199 A. 778 (1938), *aff'd*, 124 N.J.L. 127, 10 A.2d 732 (N.J.Err. & App.1940); *United States Casualty Co. v. Hyrne*, 117 N.J.L. 547, 552, 189 A. 645 (N.J.Err. & App.1937); *Conopco, Inc. v. McCreadie*, 826 F.Supp. 855 (D.N.J.1993),

---

**5.** Section 39(c) of the Bankruptcy Act of 1898, 11 U.S.C. § 67(c) (1976), limited appellate standing in bankruptcy cases to "person[s] aggrieved by an order of a referee." Although repealed in 1978, this provision "has been maintained by the courts as an essentially prudential requirement that only those who have been *directly and adversely affected* by an order of a bankruptcy court may bring an appeal." *Travelers Ins. Co. v. H.K. Porter Co., Inc.*, 45 F.3d 737 (3d Cir.1995) (emphasis added) (citing *Matter of Fondiller*, 707 F.2d 441, 443 (9th Cir.1983)).

*aff'd*, 40 F.3d 1239 (3d Cir.1994); *Amland Properties Corp. v. Aluminum Company of America*, 808 F.Supp. 1187, 1196–97 (D.N.J. 1992). Since all the theories alleged in the Amended Complaint are inherently tort claims, defendants argue, the trustee could not legally assign these claims to ISI. Defendants thus submit that ISI has no standing to pursue this action against them.

### Copyright Claim

 Although New Jersey law proscribes the transfer of pre-judgment tort claims, the SSSI defendants' argument is manifestly wrong insofar as it pertains to the non-assignability of the copyright infringement cause of action. Although copyright infringement is fundamentally a tort, *see Donner v. Tams–Witmark Music Library, Inc.*, 480 F.Supp. 1229, 1233 (E.D.Pa.1979), it arises under federal law, rendering it unaffected by state law restrictions on assignment. A copyright is freely assignable, *see* 17 U.S.C. § 201(d)(1), and the transfer can include claims for infringement that accrued before the assignment. *See SAPC, Inc. v. Lotus Development Corp.*, 921 F.2d 360 (1st Cir.1990); *Parfums Givenchy, Inc. v. C & C Beauty Sales*, 832 F.Supp. 1378 (C.D.Cal. 1993); *Custom Decor, Inc. v. Nautical Crafts, Inc.*, 502 F.Supp. 154 (E.D.Pa.1980). The Court is therefore confident that the copyright claim is a tort cause of action that the bankruptcy trustee could, as a matter of federal law, transfer.

### State Law Tort Claims

 A more vexing question is whether the bankruptcy trustee could legally transfer tort claims that arise under New Jersey law. Operation of the New Jersey restriction on assignment in the bankruptcy context would compel a trustee to litigate or abandon all claims, arguably frustrating the Bankruptcy Code's pervading policy—the expeditious liquidation of an estate. The Supremacy Clause mandates that where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress", *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941), state law must yield. *See Perez v. Campbell*, 402 U.S. 637, 652, 91 S.Ct. 1704, 1712, 29 L.Ed.2d 233 (1971) (discussing Supremacy Clause in the bankruptcy context); *In re Smith–Douglass, Inc.*, 856 F.2d 12, 15–16 (4th Cir.1988) ("The overriding purpose of the Code is the expeditious and equitable distribution of the assets of the debtor's estate. *Midlantic [National] Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494], 508, 106 S.Ct. 755, 763, 88 L.Ed.2d 859 (1986) (Rehnquist, J., dissenting). State laws which obstruct expeditious and equitable distribution, therefore are preempted by the Code."). Still, "the usual rule is that congressional intent to pre-empt will not be inferred lightly" because the interpretive default position is that Congress did not intend to displace state law. *Matter of Roach*, 824 F.2d 1370, 1373 (3d Cir.1987). Whether federal bankruptcy law supersedes state laws proscribing the assignment of tort claims appears to be an issue of first impression in the federal courts.

### Did the Trustee Acquire the Tort Claims?

 The Bankruptcy Code defines the bankrupt's estate broadly to encompass all kinds of property, including intangibles and causes of action. 11 U.S.C. § 541 reads:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. . . .

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision—

(A) that restricts or conditions transfer of such interest by the debtor. . . .

This provision significantly changed what had constituted property of the estate under the former Bankruptcy Act. As a House Report explained, bankruptcy law under the old Act was "a complicated melange of references to State law, and [did] little to further the bankruptcy policy of distribution of the

debtor's property to his creditor in satisfaction of his debts.... The bill determines what is property of the estate by a simple reference to what interests in property the debtor has at the commencement of the case. This includes all interests, such as ... tangible and intangible property, ... [and] causes of action ... whether or not transferable by the debtor." H.R.Rep. No. 595, 95th Cong., 2d Sess. 175, reprinted in 1978 U.S.Code Cong. & Admin.News pp. 5787, 5693, 6136 (footnotes omitted).

This legislative history suggests that federal bankruptcy law supersedes state law restricting the assignability of tort claims. Although the Third Circuit has not had occasion to address this question, decisions from other circuits strongly support the proposition that "[s]ection 541 eliminated the requirement that property must be transferable or subject to process in order to become initially part of the estate." *Matter of Geise,* 992 F.2d 651, 655 (7th Cir.1993). *See also In re Cottrell,* 876 F.2d 540, 542–43 (6th Cir. 1989); *Sierra Switchboard Co. v. Westinghouse Electric Co.,* 789 F.2d 705, 709 (9th Cir.1986) ("By adopting a comprehensive definition, the Bankruptcy Reform Act reduced the bankruptcy court's cumbersome reliance on state law analysis for determining property to be included in the estate."); *Tignor v. Parkinson,* 729 F.2d 977, 980 (4th Cir.1984). *See also* L. King, *Collier on Bankruptcy,* ¶ 541.09 (15th ed. 1990) ("Under the Code, *all* interests of the debtor in property come into the estate pursuant to section 541(a)(1) regardless of whether they are transferable or creditors could have by some means reached them."). *But cf. In re Crysen/Montenay Energy Co.,* 902 F.2d 1098 (2d Cir.1990).[6] Given the overwhelming weight of authority, this Court holds that New Jersey's general rule regarding the transfer of tort claims does not preclude assignment of a debtor's tort causes of action to his bankruptcy estate.

*Could the Trustee Sell Pre–Judgment Tort Claims?*

▮ The more important questions in the instant case, however, are the nature of the interest the estate receives and the power of the trustee to liquidate the property. 11 U.S.C. § 704(1) instructs the bankruptcy trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interest of the parties." Furthermore, 11 U.S.C. § 363(b)(1) authorizes a trustee, "after notice and a hearing, [to] use, sell, or lease, other than in the ordinary course of business, property of the estate." These provisions seem designed to promote an expeditious and "effective liquidation of the debtor's property." *Collier on Bankruptcy* at ¶ 541.02.

▮ Yet neither expressly authorizes the trustee to sell property contrary to transfer restrictions imposed by state law. This is significant since preemption analysis focuses on congressional intent, and of course requires an examination of statutory language. *See Matter of Estate of Medcare HMO,* 998 F.2d 436, 440 (7th Cir.1993). *See also Matter of Roach,* 824 F.2d at 1374 ("Our task is to ascertain and give effect to congressional intent. However, we must approach that task with the realization that the Bankruptcy Code was written with the expectation that it would be applied in the context of state law and that federal courts are not licensed to disregard interests created by state law when that course is not clearly required to effectuate federal interests."). Moreover, in other sections, the Bankruptcy Code explicitly displaces state nonbankruptcy law, indicating that when Congress intended to supersede state law, it spoke with other than Delphic locution. *See, e.g.,* 11 U.S.C. § 1123(a) ("Notwithstanding any otherwise applicable nonbankruptcy law, a [reorganization] plan shall- ..."); 11 U.S.C. § 541(c)(1) ("[A]n interest of the debtor in property be-

---

**6.** Some courts have read this decision to be in conflict with the majority approach. However, the issue presented was slightly different and this Court does not so construe it. In *In re Crysen,* the court first had to determine whether debtor or creditor possessed a property interest in a tort cause of action. To decide this, the court examined New York commercial law. In the decisions constituting the so-called majority approach, there was no dispute that the tort causes of action were owned exclusively by the debtor immediately prior to initiation of bankruptcy proceedings.

comes property of the estate ... notwithstanding any provision-(A) that restricts or conditions transfer of such interest by the debtor"); 11 U.S.C. § 363(*l*) ("Subject to the provisions of section 365, the trustee may use, sell, or lease property under subsection (b) or (c) of this section ... notwithstanding any provision ... [in] applicable law that is conditioned on the insolvency or financial condition of the debtor ...").

Given these textual and structural clues, courts that have confronted related questions have concluded that §§ 363(b)(1) and 704 are "simply enabling statutes that give the trustee the authority to sell or dispose of property if the debtors would have had the same right under state law." *In re Schauer,* 835 F.2d 1222, 1225 (8th Cir.1987). *See also In re FCX, Inc.,* 853 F.2d 1149, 1155 (4th Cir.1988) ("Neither § 363(b)(1), nor § 704, is an empowering statute in the sense that the new rights or powers for dealing with the property of the estate are created.... [They] evince[ ] no intent to enlarge the trustee's rights to take such actions beyond the debtor's pre-bankruptcy rights."), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989); *In re Bishop College,* 151 B.R. 394, 398–399 (Bankr.N.D.Tx.1993); *In re Draughon Training Institute, Inc.,* 119 B.R. 927, 933 (Bankr.W.D.La.1990). The text and spirit of the bankruptcy provisions have not been held to preempt state laws limiting the alienability or present liquidation value of the assets, even though those limitations may undermine the expeditious liquidation of the bankruptcy estate.

For example, in *In re Schauer,* the court rejected the argument that federal bankruptcy law preempted a Minnesota farm cooperative statute, and a cooperative's bylaws promulgated thereunder, which imposed transfer restrictions on a patronage margin certificate [7] held by the debtor and passed to the bankruptcy estate pursuant to § 541. Since state law defined the debtor's interest in property which became part of the estate,

the court held "that §§ 363(b)(1) and 704 [did] not conflict with or invalidate the by-laws restriction on transferability...." *Id.* Similarly, in *Matter of Sanders,* 969 F.2d 591 (7th Cir.1992), the court held that where Illinois pension law limited the debtor's right to compel a distribution, the trustee could not force a pension distribution. And in *In re Farmers Markets, Inc.,* 792 F.2d 1400, 1403 (9th Cir.1986), the court concluded that a state law restriction on the debtor's right to transfer a liquor license likewise restricted the trustee's right to transfer the license, notwithstanding that this reduced the license's value to the estate.[8]

The Court is persuaded by the reasoning in these decisions. A contrary result would itself contravene the fundamental bankruptcy principle that the estate succeeds to whatever property the debtor possessed outside of bankruptcy. *see, e.g., Matter of Sanders,* 969 F.2d at 593 (noting the "basic tenet of bankruptcy law that a bankruptcy trustee succeeds only to the title and rights in property that the debtor had"); *In re FCX, Inc.,* 853 F.2d at 1153; *In re Schauer,* 835 F.2d at 1225; *In re Farmers Markets, Inc.,* 792 F.2d at 1403; *Collier on Bankruptcy* at ¶ 541.06. The nature and extent of such title and rights is defined by nonbankruptcy law, generally state law. *See Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979); *In re Haber Oil Co., Inc.,* 12 F.3d 426 (5th Cir.1994); *Collier on Bankruptcy* at ¶ 541.02. Like a limitation on the transfer of patronage margin certificates, New Jersey's limitation on the assignability of tort causes of action defines and qualifies the scope of a proprietary interest. Since New Jersey public policy restricted MTI's power to alienate its tort causes of action, the nature of the interests that passed to the estate pursuant to § 541 was similarly circumscribed. Therefore, the trustee lacked power to assign the claims to ISI and

---

**7.** A patronage margin certificate evidences a patron's ownership interest in a farm cooperative.

**8.** Some courts have disagreed with the Ninth Circuit's conclusion that laws which limit the transfer of liquor licenses when taxes remain unpaid define the contours of a state-created

property interest. *See, e.g., In re Terwilliger's Catering Plus, Inc.,* 911 F.2d 1168 (6th Cir.1990), *cert. denied,* 501 U.S. 1212, 111 S.Ct. 2815, 115 L.Ed.2d 987 (1991); *In re Hoffman,* 65 B.R. 985, 991 (D.R.I.1986); *In re Kick-Off, Inc.,* 82 B.R. 648, 650 (Bankr.D.Mass.), *aff'd,* 1988 WL 123927 (D.Mass).

**730**

plaintiff has no standing to pursue its state law tort claims.

The Court concedes that this construction of the Bankruptcy Code potentially imposes additional litigation burdens on the trustee and may adversely affect creditors waiting for estate liquidation. In this particular case, it may also suggest rescission of the asset sale to ISI because, absent MTI's causes of action against the SSSI defendants, ISI may not have purchased MTI's general intangibles from the trustee. Nevertheless, the Court agrees with the other courts that fidelity to the text and structure of the Code requires the result here.

### No Damages

▮ Defendants also argue that summary judgment is appropriate because ISI cannot establish damages, an essential element of its claims. Defendants submit that MTI suffered no damages between July 29, 1994, the date MTI ceased operations, and August 21, 1995, the date ISI took title to MTI's remaining assets.

This argument is unavailing insofar as it pertains to the copyright claim, the only claim upon which ISI has standing to sue as MTI's assignee. Even though MTI was out of business and not utilizing its copyrights after July 29, 1994, statutory damages or defendants' profits realized by their infringement remain available. *See* 17 U.S.C. § 504; *Jarvis v. A & M Records,* 827 F.Supp. 282 (D.N.J.1993). Accordingly, defendants have advanced no compelling basis for summary judgment dismissing ISI's copyright claim.

### Conclusion

For the foregoing reasons, the Court denies partial summary judgment dismissing ISI's copyright infringement claim but grants partial summary judgment dismissing Counts Two through Seven of the Amended Complaint.