[No. D028685. Fourth Dist., Div. One. May 13, 1999.]

DWIGHT J. BAUM, as Trustee, etc., Plaintiff and Appellant, v.
DUCKOR, SPRADLING & METZGER et al., Defendants and
Respondents.

Estes & Hoyt and Kevin J. Hoyt for Plaintiff and Appellant.

Duckor Spradling & Metzger, Michael J. Duckor, Scott L. Metzger and Gregory P. Olson for Defendants and Respondents.

**OPINION**

**NARES, J.**—Plaintiff Dwight J. Baum, as trustee for the Baum Trust, (Baum Trust) appeals a judgment dismissing his action for legal malpractice and breach of fiduciary duty against defendants and respondents Duckor, Spradling & Metzger, a law firm, and John W. Cutchin, an attorney (collectively Duckor Spradling), after the court sustained without leave to amend Duckor Spradling's general demurrer. This action arose out of chapter 7 (11 U.S.C. § 701 et seq.) bankruptcy proceedings involving two bankrupt corporations: Braunstein International Corporation (BIC) and PRTC, Inc. (PRTC).

BIC and PRTC retained Duckor Spradling in connection with their financial restructure and bankruptcy proceedings. In its complaint, Baum Trust alleged Duckor Spradling, while representing these two corporations, also represented David Braunstein (Braunstein), the principal of BIC and PRTC. Baum Trust also alleged Duckor Spradling breached its fiduciary duties to BIC and PRTC, and committed legal malpractice by (among other things) providing dual legal representation in handling several transactions involving both BIC and Braunstein, as a result of which the assets of BIC and PRTC in the sum of at least $2 million were fraudulently transferred to Braunstein to the detriment of Baum Trust and other creditors of the corporations. Baum Trust further alleged the legal malpractice and breach of fiduciary duty causes of action of BIC and PRTC became the property of

their bankruptcy estates, and it (Baum Trust) became the "assignee of and successor to" those causes of action under an agreement with the bankruptcy trustees that was approved by order of the bankruptcy court.

Duckor Spradling challenged the two causes of action Baum Trust brought against it by filing a general demurrer, which the court sustained without leave to amend on the grounds that (1) the causes of action, though assets of the bankruptcy estates of BIC and PRTC, are claims for legal malpractice that are not assignable under California law; (2) no bankruptcy or other federal law authorizes such assignment of legal malpractice claims; and (3) two of Baum Trust's arguments—that the bankruptcy court's order approving the assignment agreement was entitled to full faith and credit, and principles of res judicata did not permit Duckor Spradling to relitigate Baum Trust's standing to prosecute these claims—were irrelevant because the agreement assigning the claims did not specifically address claims for legal malpractice, and the bankruptcy court did not consider whether such claims are assignable.

Baum Trust appeals, contending the judgment of dismissal and the order sustaining Duckor Spradling's demurrer should be reversed because the court erred (1) by misinterpreting federal and California case law to conclude the legal malpractice claims alleged against Duckor Spradling in the complaint were not assignable by the trustees of the BIC and PRTC bankruptcy estates. Baum Trust also contends the court erred (2) by failing to give full faith and credit to the bankruptcy court's order approving the bankruptcy trustees' assignment agreement, and by treating as irrelevant Baum Trust's argument that Duckor Spradling was barred by principles of res judicata from relitigating Baum Trust's authority and standing to prosecute the legal malpractice claims. Baum Trust further contends that the court erred (3) by denying it leave to amend the complaint to allege it was pursuing the claims not as an assignee, but as a "special representative" of all of the creditors of the bankruptcy estates. We affirm.

## FACTUAL BACKGROUND

We accept as true all material facts properly pleaded in Baum Trust's complaint. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Baum Trust is one of the creditors of two bankrupt corporations: BIC and PRTC.[1] Defendant Braunstein, who is not a party to this appeal, was the controlling shareholder, president, and a director of the corporations.

---

[1]Occasionally we shall refer to BIC and PRTC collectively as "the corporations."

### A. *Duckor Spradling's Alleged Dual Legal Representation of the Corporations and Their Principal, Braunstein*

Beginning in August 1994 Braunstein engaged in a series of transactions that allegedly led to the transfer to himself or entities under his control, without consideration, of substantially all of the assets of BIC and PRTC. The value of these assets was at least $2 million.

In November 1994 BIC and PRTC retained Duckor Spradling in connection with their financial restructure and forthcoming bankruptcy proceedings. Duckor Spradling, while representing the corporations, also represented Braunstein in connection with several transactions involving (among other things) the transfer without consideration of substantially all office, manufacturing and repair equipment from the corporations to BIC Technologies, Inc., an alter ego of Braunstein.

### B. *The Corporations' Chapter 7 Bankruptcy Proceedings*

In January 1995 Braunstein caused Duckor Spradling to commence chapter 7 bankruptcy proceedings for both BIC and PRTC. Baum Trust's complaint further alleges the corporations suffered damages in excess of $2 million as a result of the allegedly fraudulent transfer of assets from the corporations to Braunstein and his entities, and of the alleged legal malpractice and breach of fiduciary duty committed by Duckor Spradling. Baum Trust asserts that it and other creditors of the corporations suffered detriment as a result of Duckor Spradling's participation in the allegedly fraudulent transfer of the corporations' assets, and its failure to list those assets in the bankruptcy schedules.

### C. *Agreement Assigning the Corporations' "Collective Claims and Rights" to Baum Trust*

Harold S. Taxel (Taxel) was the chapter 7 trustee for BIC's bankruptcy estate. Gregory A. Akers (Akers) was the chapter 7 trustee for PRTC's bankruptcy estate.

In November 1996, Taxel, Akers and Baum Trust entered into a written agreement, titled "Agreement for Transfer of Interests and Prosecution of Claims" (the agreement). The agreement, a copy of which Duckor Spradling lodged with the court in support of its demurrer, provided for the assignment of unspecified claims—denominated "Collective Claims and Rights" in paragraph M of the recitals—from the bankruptcy estates of the corporations to Baum Trust. Paragraph M states in part: "M. [T]he parties believe that one

or both of the bankruptcy estates and/or their respective trustees, pursuant to Bankruptcy Code[] Section[s] 541 through 552 have *claims and rights against . . . attorneys . . . ,* which claims or rights relate to or *arise out of . . . transfers of property of BIC and/or PRTC or their estates . . . .* Such claims or rights . . . *include but are not limited to such claims or rights arising under either non-bankruptcy law [or] bankruptcy law.* All of the foregoing claims and rights described in this paragraph are herein referred to as the *'Collective Claims and Rights.'* " (Italics added.)

Section 1 of the agreement, which followed paragraph M, provided for the assignment to Baum Trust of the corporations' collective claims and rights. Section 1 states in part: "1. *Transfer Of Interest In Collective Claims And Rights.* Akers and Taxel agree to *assign* to The Baum Trust, and The Baum Trust agrees to accept from Akers and Taxel at closing, an interest in the *Collective Claims and Rights . . .* on the following terms and conditions: [¶] a. The transfer to The Baum Trust shall include *all substantive legal and procedural rights* of Akers and/or Taxel and their respective bankruptcy estates *so that The Baum Trust may pursue the Collective Claims and Rights as a special representative on behalf of the respective bankruptcy estates*; [¶] b. The bankruptcy estates shall collectively retain a 50% interest in any net recovery . . . on such *Collective Claims and Rights . . . .*" (Italics added.)

The agreement thus did not explicitly provide for the assignment to Baum Trust of any legal malpractice or breach of fiduciary duty cause of action purportedly belonging to the corporations. The agreement, however, did provide for the assignment to Baum Trust of "claims and rights against . . . attorneys" relating to or arising out of "transfers of property of BIC and/or PRTC or their estates" that "include but are not limited to such claims or rights arising under either non-bankruptcy law [or] bankruptcy law." The agreed upon assignment expressly included "all substantive legal and procedural rights" of the corporations' chapter 7 bankruptcy trustees and their respective bankruptcy estates so that Baum Trust "may pursue the Collective Claims and Rights as a special representative on behalf of the respective bankruptcy estates."

D.   *Bankruptcy Court Order Approving the Agreement*

In January 1997 the bankruptcy court entered orders administratively consolidating the corporations' bankruptcy cases, and approving the agreement assigning to Baum Trust the collective claims and rights (discussed, *ante*). In support of its demurrer, Duckor Spradling lodged a copy of these orders with the court. Although the orders explicitly referred to both the agreement and the collective claims and rights purportedly assigned thereunder to Baum Trust, the orders were silent regarding assignment of any legal malpractice or breach of fiduciary duty claims.

PROCEDURAL BACKGROUND

### A. Baum Trust's Complaint

In January 1997 Baum Trust filed a complaint against 12 defendants, alleging 9 causes of action.[2] All of the causes of action related to Braunstein's alleged scheme to "strip" BIC and PRTC of their assets, culminating with Duckor Spradling's filing of the chapter 7 bankruptcy petitions for the corporations. The complaint named Duckor Spradling as the sole defendant in both the sixth cause of action for breach of fiduciary duty and the seventh cause of action for legal malpractice.

In its complaint, Baum Trust alleged that all of the causes of action of the corporations, including the legal malpractice and breach of fiduciary duty claims against Duckor Spradling, became the property of the corporations' respective bankruptcy estates under 11 United States Code section 541, and the trustees of these estates obtained the rights under 11 United States Code section 544 to sue for recovery of the allegedly fraudulent transfers of corporate assets. The complaint further alleged that Baum Trust became the "assignee of and successor to" those causes of action under the agreement (discussed, *ante*) with the bankruptcy trustees as approved by orders of the bankruptcy court.

### B. Duckor Spradling's Successful Demurrer

In February 1997 Duckor Spradling responded to the complaint by demurring to the complaint.[3] Duckor Spradling's general demurrer challenged the legal sufficiency of the two causes of action alleged against it: the sixth cause of action for breach of fiduciary duty and the seventh cause of action for legal malpractice.

The court sustained the demurrer without leave to amend as to both causes of action on the grounds that (1) the causes of action, though assets of the bankruptcy estates of BIC and PRTC, are claims for legal malpractice that are not assignable under California law; (2) no bankruptcy or other federal

---

[2]The nine causes of action alleged in the complaint are: breach of fiduciary duty (first cause of action); usurpation of corporate opportunities (second cause of action); recovery of fraudulent transfers (third cause of action); breach of fiduciary duty (fourth cause of action); legal malpractice (fifth cause of action); *breach of fiduciary duty (sixth cause of action); legal malpractice (seventh cause of action)*; breach of oral contract (eighth cause of action); and breach of implied in fact contract (ninth cause of action).

[3]Duckor Spradling also moved to strike portions of the complaint. The court took this motion off calendar as moot after (as we shall discuss) it sustained the demurrer without leave to amend.

law authorizes assignment of legal malpractice claims; and (3) two of Baum Trust's arguments—that the bankruptcy court's order approving the assignment agreement was entitled to full faith and credit, and that principles of res judicata did not permit Duckor Spradling to relitigate Baum Trust's standing to prosecute these claims—were irrelevant because the agreement assigning the claims to Baum Trust did not specifically address claims for legal malpractice, and the bankruptcy court did not consider whether such claims are assignable. Baum Trust's timely appeal followed.

## STANDARD OF REVIEW

■ In examining the sufficiency of Baum Trust's complaint, we treat Duckor Spradling's demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (*Ibid.*) When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility the defect can be cured by amendment. If it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Ibid.*) The burden of proving such reasonable possibility is squarely on the plaintiff. (*Ibid.*)

## DISCUSSION

### I

### *The Court Properly Sustained the Demurrer Without Leave to Amend*

As will appear, Baum Trust's complaint does not state facts sufficient to constitute a cause of action against Duckor Spradling because the bankruptcy trustees' purported assignment to Baum Trust of the debtor corporations' legal malpractice and breach of fiduciary duty claims was invalid as a matter of California law and public policy, and Baum Trust has not carried its burden of showing a reasonable probability its pleading defect can be cured by amendment.

### A. *The Gravamen of Baum Trust's Claims Is Legal Malpractice, and Such Claims Are Not Assignable Under California Law and Public Policy*

Baum Trust first contends the judgment of dismissal entered after the court sustained Duckor Spradling's demurrer without leave to amend should be reversed because the court misinterpreted federal and California state law

to conclude the legal malpractice claims alleged against Duckor Spradling in the complaint were not assignable by the trustees of the BIC and PRTC bankruptcy estates. This contention is based on Baum Trust's further assertions that (1) federal law, which provides for the involuntary assignment of legal malpractice claims to a bankruptcy estate, invalidates any state law restrictions on the transfer; (2) federal law permits the bankruptcy trustees to reassign the estates' claims unless restricted by state law, but California law does not restrict such transfers by bankruptcy trustees; and (3) upon the involuntary transfer of the corporations' claims to their respective bankruptcy estates, California's public policy considerations against assignment no longer applied, and countervailing bankruptcy policies favored assignability. We reject these contentions.

### 1. *Applicable Legal Principles*

Baum Trust does not challenge the court's conclusion that both causes of action to which Duckor Spradling successfully demurred—the sixth cause of action for breach of fiduciary duty and the seventh cause of action for legal malpractice—are for legal malpractice. The principal issue of law we must decide is thus whether a legal malpractice claim belonging to the bankruptcy estate of a corporation may be assigned by the trustee of that estate to a creditor of the corporation for prosecution in state court. We conclude such a chose in action is not assignable as a matter of California law and public policy, and thus the court properly sustained Duckor Spradling's general demurrer. We proceed to review the applicable legal principles that guide our analysis.

### a. *California's general rule that choses in action are assignable, and the exception for wrongs of a "personal" nature*

In California a "chose in action," also known as a "thing in action," is statutorily defined as "a right to recover money or other personal property by a judicial proceeding." (Civ. Code, § 953.) ▮ In *Goodley* v. *Wank & Wank, Inc.* (1976) 62 Cal.App.3d 389 [133 Cal.Rptr. 83] (*Goodley*), the Court of Appeal explained that the Legislature in 1872 effected a change in the common law rule of nonassignability of choses in action by enacting Civil Code sections 953 and 954[4] : "Thus a thing in action arising out of either the violation of a right of property or an obligation or contract may be transferred [citations]. The construction and application of the broad rule of

---

[4]Civil Code section 953 provides: "A thing in action is a right to recover money or other personal property by a judicial proceeding."

Civil Code section 954 provides: "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner."

assignability have developed a complex pattern of case law underlying which is the basic public policy that ' "[a]ssignability of things in action is now the rule; nonassignability the exception" ' [citations]. ' "[A]nd this exception is confined to wrongs done to the person, the reputation, [or] the feelings of the injured party, and to contracts of a purely personal nature, like promises of marriage." ' [Citation.] Thus, causes of action for personal injuries arising out of a tort are not assignable nor are those founded upon wrongs of a purely personal nature such as to the reputation or the feelings of the one injured. Assignable are choses in action arising out of an obligation or breach of contract as are those arising out of the violation of a right of property (§ 954, Civ. Code) or a wrong involving injury to personal or real property." (*Goodley, supra,* 62 Cal.App.3d at p. 393, fns. omitted; see also 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 933, p. 833 ["Choses in action are assignable when they arise out of an *obligation* or out of the *violation of a right of property.*"].)

  b. *Goodley rule that legal malpractice claims are not assignable as a matter of California public policy*

  ■ In *Kracht v. Perrin, Gartland & Doyle* (1990) 219 Cal.App.3d 1019, 1023 [268 Cal.Rptr. 637] (*Kracht*), this court recognized: "It is now well settled that under California law a former client may not voluntarily assign his claims for legal malpractice against his former attorneys. In *Goodley*[, *supra,*] 62 Cal.App.3d 389, and more recently in *Jackson v. Rogers & Wells* [(1989)] 210 Cal.App.3d [336 [258 Cal.Rptr. 454]], the courts determined that although choses in action for property or pecuniary losses are generally assignable, a claim for legal malpractice is more akin to those types of claims which are *not* assignable, i.e., claims for personal injury, wrongs of a purely personal nature (such as injuries to the reputation or feelings of the injured party) or breaches of contracts of a purely personal nature (such as promises of marriage). (*Goodley . . . , supra,* 62 Cal.App.3d at pp. 393-395; *Jackson . . . , supra,* 210 Cal.App.3d at pp. 341-342.) *Goodley* and *Jackson* concluded that the attorney-client relationship (although containing contractual elements) is unique and involves a highly personal and confidential relationship, making the relationship '. . . more analogous to a contract of a personal nature than to an ordinary commercial contract' (*Jackson . . . , supra,* 210 Cal.App.3d at p. 342), and rendering claims for negligent breach thereof nonassignable." (Fn. omitted.) The court's omitted footnote 4 provides: "The vast weight of authority from other jurisdictions also holds that legal malpractice claims are not assignable. (See *Jackson . . . , supra,* 210 Cal.App.3d at p. 343.)" (*Kracht, supra,* 219 Cal.App.3d at p. 1023, fn. 4.)

  In *Kracht,* this court explained that the decisions in *Goodley, supra,* 62 Cal.App.3d 389, and *Jackson v. Rogers & Wells* (1989) 210 Cal.App.3d 336

[258 Cal.Rptr. 454] (*Jackson*) both recognized that numerous public policy considerations are involved in the determination of whether claims for legal malpractice should be assignable. With respect to *Goodley*, this court stated: "*Goodley* noted the attorney owes a duty of undivided loyalty and diligence in representing the client. Such duty is personally owed by the attorney and may not be delegated to others, and is owed solely to the client, his one intended beneficiary. Assignability would encourage commercialization of claims, and would force attorneys to defend themselves against persons to whom no duty was ever owed. Moreover, the legal profession is debased by such commercialization, because it could (1) encourage unjustified lawsuits; (2) generate increased malpractice lawsuits, burdening the profession, the court system and (to the extent malpractice premiums would inevitably rise and be passed to the consumers) the public; and (3) promote champerty.[5] (*Goodley. . . , supra*, 62 Cal.App.3d at p. 397.) Assignability could conceivably reduce the public's access to legal services, since the ever present threat of assignment by irresponsible clients (seeking quick financial gain) could cause lawyers to evaluate more selectively the desirability of representing a particular client. (*Id.* at pp. 397-398.)" (*Kracht, supra,* 219 Cal.App.3d at pp. 1023-1024.)

This court also noted in *Kracht* that the *Jackson* decision recognized that other policy considerations support the rule of nonassignability of legal malpractice claims: "*Jackson* cited additional policy considerations militating against assignability. The sanctity of the relationship, with its duties of vigorous representation and undivided loyalty, is imperiled by assignability. If an attorney perceives that his current adversary might some day be entitled to sue him for malpractice, he may be reluctant to pursue vigorously the current litigation for fear of providing motivation (i.e., his adversary's wrath) for a later malpractice action. Such a damper on the attorney's zeal also undermines the client's trust in his attorney, because the client could well question whether the attorney was making tactical choices based solely on the client's best interests." (*Kracht, supra,* 219 Cal.App.3d at p. 1024, citing *Jackson, supra,* 210 Cal.App.3d at pp. 347-348.)

###### c. *Kracht extension of the Goodley rule to all voluntary and involuntary assignments of legal malpractice claims*

█ This court held in *Kracht* that the *Goodley* rule applies to any assignment of a legal malpractice claim, whether voluntary or involuntary.

---

[5]"Champerty" is defined as a "bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds; it is one type of 'maintenance,' the more general term which refers to maintaining, supporting, or promoting another person's litigation. . . ." (Black's Law Dict. (6th ed. 1990) p. 231, col. 1.)

(*Kracht, supra,* 219 Cal.App.3d at p. 1024.) In *Kracht,* the plaintiff (Kracht), as administratrix of an estate, had obtained a judgment in California against a third party (Hogue) in the underlying case. (*Id.* at p. 1021.) When Kracht served discovery on him, Hogue consulted attorneys who assisted him in the preparation of responses to the discovery requests. (*Ibid.*) Kracht obtained the underlying judgment after the trial court found the responses inadequate. (*Ibid.*) Kracht sought and obtained a court order under Code of Civil Procedure sections 708.510 and 708.520, compelling Hogue to assign to her all choses in action which he held against the attorneys who had assisted him. (219 Cal.App.3d at p. 1021.) When Kracht filed a complaint for legal malpractice against the attorneys, they successfully demurred on the ground legal malpractice claims are not assignable. Kracht appealed from the resulting judgment of dismissal. (*Id.* at p. 1022.)

Affirming the judgment of dismissal, this court in *Kracht* held that "[t]he public policy concerns expressed in *Jackson* and *Goodley* are violated by *any* assignment of claims, whether voluntary or (as here) involuntary." (*Kracht, supra,* 219 Cal.App.3d at p. 1024.) In so holding, this court reasoned that "[a]dditional [public policy] reasons against assignability [of a legal malpractice claim] are suggested by this case, involving an *involuntary* transfer to the former adversary. First, a suit could be filed, even though the former client (to whom the duty was owed) was entirely satisfied with the services and opposed the filing of a malpractice lawsuit. Second, a suit brought on a claim acquired by involuntary assignment, and against the client's wishes, places the attorney in an untenable position. He must preserve the attorney-client privilege (the client having done nothing to waive the privilege) while trying to show that his representation of the client was not negligent."[6] (*Kracht, supra,* 219 Cal.App.3d at p. 1024, fns. omitted.)

### d.  *In re J.E. Marion, Inc.: Extension of the Goodley rule to assignments of legal malpractice claims in bankruptcy*

In our view, the holding of this court in *Kracht,* that the *Goodley* rule prohibiting assignment of legal malpractice claims applies to any assignment of such a claim, whether voluntary or involuntary (*Kracht, supra,* 219 Cal.App.3d at p. 1024), should be extended for sound public policy reasons

---

[6]In *Kracht,* this court raised a third public policy concern that addressed the specific facts of that case: "Finally, a malpractice suit filed by the former adversary is 'fraught with illogic' (*Jackson, supra,* 210 Cal.App.3d at p. 348) and unseemly arguments: In the former lawsuit Kracht judicially averred and proved she *was entitled* to recover against Hogue; but in the malpractice lawsuit Kracht must judicially aver that, but for attorney's negligence, she *was not entitled* to have recovered against Hogue. Reduced to its essence, Kracht's argument in the malpractice action is 'To the extent I was not entitled to recover, I am now entitled to recover.' " (*Kracht, supra,* 219 Cal.App.3d at pp. 1024-1025.)

to cases (such as the instant case) in which a legal malpractice chose in action belonging to a bankrupt corporation involuntarily becomes an asset of the bankruptcy estate, and is then purportedly assigned by the bankruptcy trustee to a creditor of the debtor corporation. We find guidance in the decision of first impression of the Bankruptcy Court for the Southern District of Texas in the case *In re J.E. Marion, Inc.* (Bankr. S.D.Tex. 1996) 199 B.R. 635 (*Marion Inc.*), which is factually on point and well reasoned.

In *Marion Inc.*, an involuntary chapter 7 petition was filed against a corporation and, as occurred in the instant case, the trustee of the debtor corporation's bankruptcy estate filed a motion for an order authorizing the assignment to a creditor group of several potential claims (which the trustee deemed to be assets of the estate) against parties classified as "insiders," including a claim for legal malpractice against former counsel of the bankrupt corporation. (*Marion Inc., supra,* 199 B.R. at pp. 635-636.) The issue of first impression before the bankruptcy court in *Marion Inc.*, like the issue presented here, was whether a trustee in bankruptcy may assign a legal malpractice claim against former counsel of a debtor corporation. (*Id.* at p. 636.)

The *Marion Inc.* court first determined that the malpractice claims were property of the bankruptcy estate under 11 United States Code section 541, which defines property of a bankruptcy estate.[7] Following the decision of the Bankruptcy Court for the Western District of Washington in *In re Ellwanger* (Bankr. W.D.Wash. 1992) 140 B.R. 891, the court in *Marion Inc.* held that legal malpractice claims arising out of pre-petition and post-petition representation of a debtor that accrue under state law are property of the estate under 11 United States Code section 541. (*Marion Inc., supra,* 199 B.R. at pp. 636-637.)

After reviewing the public policy considerations supporting the California *Goodley* rule that legal malpractice claims are not assignable, and noting that such claims are also not assignable as a matter of law in Texas, the *Marion Inc.* court concluded that "the costs to the legal system of assigning legal malpractice claims in the bankruptcy context outweigh[] the benefits," and

---

[7] 11 United States Code section 541 provides in part: "(a) The commencement of a case . . . creates an estate. *Such estate is comprised of all the following property,* wherever located and by whomever held: [¶] (1) Except as provided in subsections (b) and (c)(2) of this section, *all legal or equitable interests of the debtor in property as of the commencement of the case.* [¶] . . . [¶] . . . (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law— [¶](A) that restricts or conditions transfer of such interest by the debtor . . . ." (Italics added.)

held as a matter of public policy that the chapter 7 corporate debtor's legal malpractice claims against its former counsel were not assignable by the bankruptcy trustee, even though those claims were property of the bankruptcy estate. (*Marion Inc., supra,* 199 B.R. at pp. 636-639.)

## 2. *Analysis*

■ We hold that Baum Trust's complaint fails to state a cause of action, and thus the court properly sustained Duckor Spradling's general demurrer, because the bankrupt corporations' alleged causes of action against Duckor Spradling for legal malpractice and breach of fiduciary duty, were not, and are not assignable as a matter of law and sound public policy, even though, as Baum Trust alleges, the bankruptcy court approved the written agreement under which the claims were purportedly assigned to Baum Trust.

Many of the public policy concerns discussed in *Goodley, Jackson* and *Kracht* are also of concern in the context of a bankruptcy trustee's purported assignment to creditors of a debtor corporation's potential legal malpractice claims against its former counsel. The attorney-client relationship is unique and involves a highly confidential relationship even where the client is a corporation. An attorney owes all clients, including a corporate client, duties of undivided loyalty and diligence, among other fiduciary duties. A bankruptcy trustee's purported assignment to creditors of a debtor's legal malpractice chose in action, especially under circumstances in which the bankruptcy trustee has decided not to prosecute such a claim, could encourage unjustified lawsuits and the commercialization of claims condemned in *Goodley, supra,* 62 Cal.App.3d at page 397. Even where, as alleged here, the bankruptcy court would have an "oversight" role during a creditor assignee's prosecution of the legal malpractice claim against the debtor's former counsel, the assignment and prosecution of the claim would force attorneys to defend themselves against persons to whom no fiduciary duty of duty of care was owed. (*Ibid.*) Such assignments would generate malpractice lawsuits, burdening the profession and the court system. (*Ibid.*)

Because so many of the relevant policy concerns discussed in *Goodley, Jackson* and *Kracht* are also of concern in the factual context of the instant case, we conclude, as did the *Marion Inc.* court, that "the costs to the legal system of assigning legal malpractice claims in the bankruptcy context outweigh[] the benefits." (*Marion Inc., supra,* 199 B.R. at p. 639.) We thus hold that a legal malpractice claim belonging to the bankruptcy estate of a corporation may not be assigned by the trustee of that estate to a creditor of the corporation or any other person.

We also conclude that the court properly ruled the corporations' potential legal malpractice claims against Duckor Spradling are property of the respective bankruptcy estates of the corporate debtors, BIC and PRTC, under

11 United States Code section 541, notwithstanding the rule in California under the *Goodley* and *Kracht* decisions that the assignment of such claims, whether voluntary or involuntary, is not permitted as a matter of public policy. (*Kracht, supra,* 219 Cal.App.3d at pp. 1023-1024.) Here, as in *Kracht* and *Marion Inc.*, the complaint alleging legal malpractice against Duckor Spradling was filed by an assignee (Baum Trust) following an involuntary assignment of the malpractice chose in action. The factual allegations in the complaint, which we accept as true for purposes of this appeal, show that the legal malpractice cause of action at issue in this appeal originally belonged to the bankrupt corporations, and became property of their respective bankruptcy estates by operation of law under 11 United States Code section 541 upon the filing of the petitions that commenced the bankruptcy proceedings. (*Marion Inc., supra,* 199 B.R. at p. 636.)

Baum Trust's reliance on *Troost* v. *Estate of DeBoer* (1984) 155 Cal.App.3d 289 [202 Cal.Rptr. 47] (*Troost*) is misplaced. *Troost* held that a negligence cause of action against an insurance agent was assignable. (*Id.* at pp. 296-297.) The *Troost* court expressly distinguished *Goodley*: "The court [in *Goodley*] held a claim for damages for legal malpractice was not assignable because of 'the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship.' ([*Goodley, supra,* 62 Cal.App.3d] at p. 397.) The court recognized that legal malpractice does not necessarily constitute 'a "tort of a purely personal nature" on a par with those wrongs done to the person of the injured party or his reputation or feelings which fall within the exception to the general rule of assignability.' (*Ibid.*) Nevertheless, the special nature of legal services called for the creation of an additional exception to the general rule of assignability. Those unique factors are not present in the instant case. The procurement of insurance through a broker or agent is a commercial transaction with intended beneficiaries beyond the client alone." (*Troost, supra,* 155 Cal.App.3d at p. 297.)

Baum Trust's reliance on *In re Professional Inv. Properties of America* (9th Cir. 1992) 955 F.2d 623, 625 (*Professional Investment*) is also misplaced. *Professional Investment* is inapposite because it did not involve an assignment of a legal malpractice claim, and thus did not involve the public policy considerations with which this court is here concerned. The issue decided in *Professional Investment* was whether the contents of a creditor's petition that forced a debtor into involuntary bankruptcy put the trustee on sufficient inquiry notice of the creditor's interest under recorded instruments concerning a specific parcel of real property.

We reject Baum Trust's contentions (1) that federal law, which provides for the involuntary assignment of a debtor's legal malpractice claims to a

bankruptcy estate under 11 United States Code section 541 (discussed *ante*), invalidates any state law restrictions on the transfer; and (2) that federal law permits the bankruptcy trustees to reassign the estates' claims unless restricted by state law, but California law does not restrict such transfers by bankruptcy trustees. The nature and extent of the debtor's rights in property, and therefore of the estate's rights in the same property, are defined by nonbankruptcy law, generally state law. (*Integrated Solutions* v. *Service Support Specialties* (Bankr. D.N.J. 1996) 193 B.R. 722, 729 (*Integrated Solutions*); see also *Butner* v. *United States* (1979) 440 U.S. 48, 54 [99 S.Ct. 914, 918, 59 L.Ed.2d 136] ["Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."].)

Baum Trust's reliance on 11 United States Code sections 363(b)(1) and 704(1)[8] is misplaced. "These provisions seem designed to promote an expeditious and 'effective liquidation of the debtor's property.'" (*Integrated Solutions, supra*, 193 B.R. at p. 728, quoting Collier on Bankruptcy (15th ed. 1990) ¶ 541.02.) Neither of these provisions, however, authorizes the trustee to sell property contrary to state law transfer restrictions. (*Integrated Solutions, supra*, 193 B.R. at p. 729.) "[Sections] 363(b)(1) and 704 are 'simply enabling statutes that give the trustee the authority to sell or dispose of property if the debtors would have had the same right under state law.'" (*Ibid.*, quoting *In re Schauer* (8th Cir. 1987) 835 F.2d 1222, 1225 (*Schauer*); see also *In re FCX, Inc.* (4th Cir. 1988) 853 F.2d 1149, 1155 (*FCX, Inc.*), cert. den. 489 U.S. 1011 [109 S.Ct. 1118, 103 L.Ed.2d 181] ["Neither § 363(b)(1), nor § 704, is an empowering statute in the sense that new rights or powers for dealing with the property of the estate are created. . . . [They] evince[] no intent to enlarge the trustee's rights to take . . . actions beyond the debtor's pre-bankruptcy rights."].) Thus, while the Bankruptcy Code specifically includes property in the bankruptcy estate regardless of state law restrictions on assignment, it does not authorize the bankruptcy trustee to sell or assign assets that are nonassignable under applicable state law.

For reasons we have discussed, the corporate debtors in the instant case, BIC and PRTC, had no right under California law to assign their alleged legal malpractice claims against Duckor Spradling. (*Kracht, supra*, 219 Cal.App.3d at p. 1024.) Because the corporations had no such right, the trustees of their respective bankruptcy estates also had no such right, with or

---

[8] 11 United States Code section 363(b)(1) (hereafter section 363(b)(1)) "authorizes a trustee, 'after notice and a hearing, [to] use, sell, or lease, other than in the ordinary course of business, property of the estate.'" (*Integrated Solutions, supra*, 193 B.R. at p. 728.)

11 United States Code section 704(1) (hereafter section 704(1)) "instructs the bankruptcy trustee to 'collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interest of the parties.'" (*Integrated Solutions, supra*, 193 B.R. at p. 728.)

without approval of the bankruptcy court. (*Integrated Solutions, supra,* 193 B.R. at p. 729; *FCX, Inc., supra,* 853 F.2d at p. 1155; *Schauer, supra,* 835 F.2d at p. 1225.)

In conclusion, Baum Trust's complaint fails to state facts sufficient to constitute a cause of action against Duckor Spradling because the purported assignment of the bankrupt corporations' alleged causes of action for legal malpractice and breach of fiduciary duty was not assignable as a matter of California law and sound public policy. The court thus properly sustained Duckor Spradling's general demurrer to the complaint.

B.  *The Bankruptcy Court Orders Approving the Agreement Assigning the Legal Malpractice Claims to Baum Trust Are Not Entitled to Full Faith and Credit, and Res Judicata Principles Do Not Apply*

█  Baum Trust next contends the court erred by ruling that two of Baum Trust's arguments in response to Duckor Spradling's demurrer—that the bankruptcy court's order approving the assignment agreement was entitled to full faith and credit, and principles of res judicata did not permit Duckor Spradling to relitigate Baum Trust's standing to prosecute these claims—were irrelevant because the agreement assigning the claims did not specifically address claims for legal malpractice, and the bankruptcy court did not consider whether such claims are assignable. We reject this contention.

As we have already discussed, because the corporate debtors in the instant case, BIC and PRTC, had no right under California law to assign to Baum Trust their alleged legal malpractice claims against Duckor Spradling, the trustees of their respective bankruptcy estates also had no such right, with or without approval of the bankruptcy court. (*Kracht, supra,* 219 Cal.App.3d at p. 1024; *Integrated Solutions, supra,* 193 B.R. at p. 729; *FCX, Inc., supra,* 853 F.2d at p. 1155; *Schauer, supra,* 835 F.2d at p. 1225; *Marion Inc., supra,* 199 B.R. at pp. 636-639.) The bankruptcy court's order approving the purported assignment is thus not entitled to full faith and credit. Principles of res judicata are inapplicable because the bankruptcy court's order is silent regarding the assignment of any legal malpractice claims.[9]

C.  *Baum Trust Has Not Carried Its Burden of Showing a Reasonable Probability the Pleading Defects in Its Complaint Can Be Cured by Amendment*

█  Baum Trust's final contention is that the court erred by denying it leave to amend the complaint to allege it was pursuing the legal malpractice

---

[9]As we have discussed (see pts. C and D of the Factual Background section of this opinion, *ante*), both the agreement and the bankruptcy court order approving that agreement (copies of which Duckor Spradling lodged with the court in support of its demurrer) make no explicit reference to the assignment of any legal malpractice claim.

and breach of fiduciary duty claims against Duckor Spradling not as an assignee, but as a "special representative" of all of the creditors of the bankruptcy estates. We reject this contention.

When, as occurred here, a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility the pleading defect can be cured by amendment. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.) If it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Ibid.*) The burden of proving such reasonable possibility is squarely on the plaintiff. (*Ibid.*)

Baum Trust has not carried, and cannot carry, its burden of showing there is a reasonable possibility the pleading defect in this matter can be cured by amendment. Under the applicable California and federal authorities discussed above, Duckor Spradling cannot be held liable for the legal malpractice claims pleaded in the complaint. As a matter of California state law and sound public policy, the corporations could not have lawfully assigned those claims before their respective bankruptcy petitions were filed, and their bankruptcy trustees had no greater right under federal bankruptcy law to assign those choses of action to Baum Trust. (*Integrated Solutions, supra,* 193 B.R. at p. 729; *FCX, Inc., supra,* 853 F.2d at p. 1155; *Schauer, supra,* 835 F.2d at p. 1225.)

In our view, Baum Trust's final argument that amending its pleading to change its alleged status from assignee to "special representative" is an exercise in semantics without substance. Whether Baum Trust represents only itself in this matter, or represents itself and other alleged creditors in some "special representative" capacity, the alleged assignment to Baum Trust of the legal malpractice claims alleged against Duckor Spradling in the complaint is invalid as a matter of California law and sound public policy for the reasons we have discussed, *ante.*

### DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

Huffman, Acting P. J., and Haller, J., concurred.