[No. D007361. Fourth Dist., Div. One. May 10, 1989.]

FRANCIS JACKSON, Plaintiff and Appellant, v.
ROGERS & WELLS et al., Defendants and Respondents.

**COUNSEL**

Aguirre & Meyer, Michael J. Aguirre, Patricia A. Meyer, Harrigan, Ruff, Ryder & Sbardellati and Joseph Ruff for Plaintiff and Appellant.

Gray, Cary, Ames & Frye, Marcelle E. Mihaila, William E. Grauer and Richard W. McAlister for Defendants and Respondents.

**OPINION**

**HUFFMAN, J.**—Francis Jackson appeals an order for dismissal entered after demurrers to his second amended complaint were sustained without leave to amend and his claim for punitive damages was stricken. He contends the public policies prohibiting assignment of legal malpractice causes of action and punitive damages claims should not bar this action, based on his characterization of his assigned claims as sounding in fraud and intentional breach of contract, rather than in the classic formulation of attorney negligence or malpractice. Finding these fine distinctions to be unsupported by the language of the pleading, we affirm the judgment of dismissal.

### FACTUAL AND PROCEDURAL BACKGROUND

This action arose out of an earlier lawsuit entitled Jackson v. McKee et al. (Super. Ct. San Diego County, 1982, No. 480302), in which Jackson

sued Ronald J. Mix and others for legal malpractice and securities fraud. To defend that action (unsuccessfully, as it turned out), Mix's two malpractice carriers, General Accident Insurance Company (General) and Travelers Insurance Company, affiliated with Phoenix Insurance Company (Phoenix), retained the law firm of Rogers & Wells and its partner, Mitchell Lathrop. On advice of counsel, Mix rejected several successively larger settlement offers by Jackson (ranging from $415,000 to $700,000) and in 1985 proceeded to trial, which resulted in a $1 million-plus judgment in favor of Jackson.

Based on Mix's and his insurers' and counsel's refusal to settle the case, Jackson in March 1986 filed the action now before this court. He sued defendants General and Phoenix on bad faith insurance theories including breach of contract, breach of the covenant of good faith and fair dealing, violation of Insurance Code section 790.03, and others. Jackson included the attorney defendants Rogers & Wells and Lathrop in the general bad faith causes of action and also charged fraud, conspiracy, and infliction of emotional distress.

General and Phoenix settled with Jackson. As part of the settlement, they assigned to Jackson their claims against Rogers & Wells and Lathrop, the attorneys who had formerly represented them and their insured, Mix. Each "Settlement Agreement and Assignment of Claims" specified these claims "include but are not limited to claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, *legal malpractice,* fraud and negligent misrepresentation." (Italics added.)

In March 1987 Jackson amended the complaint to delete General and Phoenix as defendants and to allege against the attorney defendants four new theories by assignment: breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, fraud, breach of contract, and a cause of action personal to him, malicious defense and intentional infliction of emotional distress. Punitive damages were sought along with general and special damages. The General and Phoenix settlement agreements and assignments of claims were pleaded as exhibits to the first amended complaint.

The attorney defendants successfully demurred to this pleading, which ran to 67 pages and was replete with verbatim quotations from correspondence and telephone conferences between the carriers and Rogers & Wells personnel. In response to a companion motion to strike, the court ordered

the evidentiary allegations stricken and struck the punitive damage claims without leave to amend. The court granted leave to amend as to all causes of action except the breach of implied covenant of good faith and fair dealing.

Jackson elected to pursue only his assigned fraud and breach of contract theories in his second amended complaint. In elaborate allegations, he detailed the attorney defendants' "intentional course of misconduct that subverted the common interest of Plaintiffs' Assignors and Mix to Defendants' plan of financial self-interest, which was designed to and did, in fact, prevent a speedy and successful resolution of the Jackson-Mix action by a settlement on reasonable terms and prolong that litigation and allow for the billing and receipt by Defendants of excessive attorney fees from Plaintiffs' Assignors." Rogers & Wells et al. are alleged to have "intentionally corrupted and debased their professional relationships with Plaintiffs' Assignors and Mix" in several respects: by misrepresenting and omitting to disclose the content of documentary and testimonial evidence to the carriers, by purposefully underestimating to them Mix's great potential exposure to liability, and by performing unnecessarily extensive and improper legal services designed only to prolong the litigation and prevent settlement, thus enriching the attorneys. Had this improper conduct not occurred, Jackson alleges, Mix would have settled earlier with Jackson, for a smaller sum than that of the eventual judgment. As assignee, Jackson thus claims damages based on fraud and breach of contract for the excessive legal fees incurred, and for the amount of the judgment paid to Jackson that exceeded the settlement offer. In justification of delayed discovery of the alleged fraud, Jackson pleads that Mix himself in 1986 sued his former attorneys Rogers & Wells for legal malpractice and related theories.

The attorney defendants again demurred and moved to strike the pleading, on the theory the fraud and breach of contract pled were substantively claims of legal malpractice and therefore not assignable under California law. Additionally, failure to state sufficient facts to state the causes of action was alleged. The motion to strike attacked certain allegations as evidentiary and irrelevant. Concluding legal malpractice claims are not assignable, whether sounding in negligence or in intentional conduct, the court sustained the demurrers without leave and found the motion to strike moot. An order dismissing the action was subsequently entered nunc pro tunc and this appeal timely followed.[1]

---

[1] Under Code of Civil Procedure section 581d, the order of dismissal constituted a judgment for all purposes.

## DISCUSSION

## I

### General Rules Regarding Review and Assignment

 In reviewing this judgment of dismissal entered upon the sustaining of a demurrer without leave to amend, we accept as true all allegations stated in the complaint. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865].) We must consider whether there is any reasonable possibility any defects in the pleading could be cured by amendment. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].) We also note that where, as here, a ruling on a motion to strike that is not itself appealable is challenged as part of the appeal from the judgment, that ruling is properly before this court. (*Grieves* v. *Superior Court* (1984) 157 Cal.App.3d 159, 166, fn. 7 [203 Cal.Rptr. 556].)

 To argue the trial court erred in sustaining the demurrer without leave to amend, Jackson relies on the general rule stated in Civil Code section 954 to support his claim the assignment to him of the fraud and intentional breach of contract causes of action was proper: "A thing in action,[2] arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. . . ."

The leading case on the issue of the nonassignability of classic legal malpractice causes of action, *Goodley* v. *Wank & Wank, Inc.* (1976) 62 Cal.App.3d 389, 393-394 [133 Cal.Rptr. 83], explicates the history and scope of the rules regarding assignment: "In 1872 our Legislature effected a change in the common law rule of nonassignability of choses in action by enacting sections 953 and 954, Civil Code. Thus a thing in action arising out of either the violation of a right of property or an obligation or contract may be transferred [citations]. The construction and application of the broad rule of assignability have developed a complex pattern of case law underlying which is the basic public policy that ' "[a]ssignability of things in action is now the rule; nonassignability the exception." ' [Citations.] ' "[A]nd this exception is confined to wrongs done to the person, the reputation, of the feelings of the injured party, and to contracts of a purely personal nature, like promises of marriage." ' [Citation.] Thus, causes of action for personal injuries arising out of a tort are not assignable nor are those founded upon wrongs of a purely personal nature such as to the reputation or the feelings

---

[2] Civil Code section 953 defines a thing in action as "a right to recover money or other personal property by a judicial proceeding."

of the one injured. Assignable are choses in action arising out of an obligation or breach of contract as are those arising out of the violation of a right of property (§ 954, Civ. Code) or a wrong involving injury to personal or real property." (Fns. omitted.)

Application of this straightforward analysis is complicated in the context of legal malpractice by the hybrid contract-tort nature of such claims. ▪ This theoretical blend was explained by the Supreme Court in *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 180-181 [98 Cal.Rptr. 837, 491 P.2d 421]: "Legal malpractice consists of the failure of an attorney 'to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' [Citation.] When such failure proximately causes damage, it gives rise to an action in tort. Since in the usual case, the attorney undertakes to perform his duties pursuant to a contract with the client, the attorney's failure to exercise the requisite skill and care is also a breach of an express or implied term of that contract. Thus legal malpractice constitutes both a tort and a breach of contract." (*Ibid.*)

▪ In ruling a chose or thing in action for legal malpractice is not assignable, the court in *Goodley* (*supra,* 62 Cal.App.3d 389) found that although the relationship between the plaintiff's assignor and the attorney defendant initially came into being due to a contract for legal services, the gravamen of the thing sought to be assigned was clearly a negligent breach of duty. Taking the contractual relationship into account, the court found the legal malpractice claims before it more analogous to a contract of a personal nature than to an ordinary commercial contract. Consequently, public policy considerations came into play due to the "uniquely personal nature of legal services" and the "highly personal and confidential attorney-client relationship" which had once existed. (*Id.* at p. 395.)[3]

---

[3] It cannot be disputed that since *Goodley* was decided in 1976, the role of the legal profession in society and in commerce has changed significantly. The United States Supreme Court recognized this trend in *Bates* v. *State Bar of Arizona* (1977) 433 U.S. 350 [53 L.Ed.2d 810, 97 S.Ct. 2691] where it stated, "the belief that lawyers are somehow 'above' trade has become an anachronism . . . ." (*Id.* at pp. 371-372 [53 L.Ed.2d at p. 828].) Accordingly, the Supreme Court there lifted restrictions on advertising by attorneys, finding the historical foundations for the same had crumbled. Nevertheless, some characteristics of the lawyer's work remain "professional" in the traditional sense of the word: the obligation to exercise due care to protect a client's best interests "in all ethical ways and in all circumstances" (*Day* v. *Rosenthal* (1985) 170 Cal.App.3d 1125, 1147 [217 Cal.Rptr. 89]), and the "sacred attributes of complete confidentiality and undivided loyalty which are the heart of the relationship between lawyer and client." (*Goldfisher* v. *Superior Court* (1982) 133 Cal.App.3d 12, 22 [183 Cal.Rptr. 609].) Therefore, although the world in which attorneys practice their profession is changing, the strong policies customarily protecting the integrity of the attorney-client relationship are still viable and must be considered here.

In *Goodley*, the court went on to conclude the public policy considerations stated above, which seek to protect the fiduciary relation between attorney and client, would be offended by allowing legal malpractice causes of action based upon a breach of duty to be relegated to the marketplace and converted into commodities exploitable by economic bidders who never had a professional relationship with the attorney, and to whom the attorney never owned any legal duty. (*Goodley, supra,* 62 Cal.App.3d at p. 397.) The court was reluctant to encourage the growth of a "lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty[4] and force attorneys to defend themselves against strangers." (*Ibid.*)

In *Purdy* v. *Pacific Automobile Ins. Co.* (1984) 157 Cal.App.3d 59, 78-79 [203 Cal.Rptr. 524], the question arose whether a legal malpractice cause of action could properly be assigned by a debtor in bankruptcy to his trustee. Finding the cause of action was defective in other respects (i.e., a lack of proximate causation pled where the client contended the attorneys had failed to advise him to act in a particular manner), the court declined to reach the assignment question or to state its opinion whether *Goodley* was correctly decided.

The weight of authority in other states, in a goodly number of cases influenced by the reasoning of *Goodley,* also disallows the assignment of legal malpractice causes of action sounding in negligence or breach of contract. (*Joos* v. *Drillock* (1982) 127 Mich.App. 99 [338 N.W.2d 736]; *Schroeder* v. *Hudgins* (1984) 142 Ariz. 395 [690 P.2d 114]; *Washington* v. *Fireman's Fund Ins. Co.* (Fla.Dist.Ct.App. 1984) 459 So.2d 1148; *Clement* v. *Prestwich* (1983) 114 Ill.App.3d 479 [448 N.E.2d 1039, 40 A.L.R.4th 679]; *Chaffee* v. *Smith* (1982) 98 Nev. 222 [645 P.2d 966]; see Annot., Assignability of Claim for Legal Malpractice (1985) 40 A.L.R.4th 684; cf. *Oppel* v. *Empire Mut. Ins.* (S.D.N.Y. 1981) 517 F.Supp. 1305 (applying New York law and holding attorney malpractice claim based on breach of implied contract and negligence was assignable); *Collins* v. *Fitzwater* (1977) 277 Ore. 401 [560 P.2d 1074] (overruled on another point in *Lancaster* v. *Royal Ins. Co. of America* (1986) 302 Ore. 62 [726 P.2d 371]) (finding no violation of public policy in an assignment by a nonculpable lay corporate director of his cause of action for legal malpractice seeking indemnity against a culpable corporate attorney-director).)

---

[4] "Champerty" is defined in Black's Law Dictionary (5th ed. 1979) as: "A bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject sought to be recovered."

We further note the *Goodley* decision has not been disapproved, overruled, or disagreed with by other California courts[5] nor has the Legislature seen fit since 1976, when the opinion was issued, to specifically authorize the assignment of legal malpractice causes of action.

In light of the above authority, we proceed to examine the allegations of Jackson's second amended complaint to determine if he has succeeded in distinguishing his case from the mainstream of authority disallowing the assignment of claims of legal malpractice. We will discuss separately his claims of fraud with accompanying punitive damages, and "intentional breach of contract."

## II

### Fraud

■ It is well established a client may pursue claims of fraud against his or her attorney in the nature of a malpractice action. As a commentator has explained: "Fraud or deceit is not legal malpractice . . . . Fraud is no more a necessary incident to the rendition of legal services than dishonesty is to any other profession. The avoidance of fraudulent conduct requires no special skill or knowledge, but only basic precepts of honesty and integrity." (Mallen & Smith, Legal Malpractice (3d ed. 1989) § 8.8, p. 421.)

For example, in *Day* v. *Rosenthal, supra,* 170 Cal.App.3d 1125, 1158-1160, a judgment including recovery for fraud against an attorney, obtained by his former clients, was upheld on the basis he had wrongfully and deliberately withheld trust funds and had engaged in a kickback scheme to defraud his clients. In response to the attorney's protestations he did not actually conceal the funds, that court noted, "An intentional failure to disclose is an actionable fraud in the presence of a fiduciary duty to disclose." (*Id.* at p. 1159.)

Similarly, in *Alton* v. *Rogers* (1954) 127 Cal.App.2d 667 [274 P.2d 487], the court affirmed a judgment containing implied findings of fraud and express findings of breach of trust where an attorney had taken a client's funds to invest them for the client but had used the funds for his own purposes and fraudulently concealed that fact.

---

[5] In *Troost* v. *Estate of DeBoer* (1984) 155 Cal.App.3d 289, 296-297 [202 Cal.Rptr. 47], the court distinguished *Goodley,* finding the unique factors it discussed (attorney-client duty and confidentiality) were not present in *Troost,* where an insured's assignment of his cause of action against his insurance broker for negligence in failing to procure adequate insurance was upheld.

In the context of fraudulent conduct by an attorney toward persons not his own clients, no preference is accorded to the attorney's professional status in the disposition of claims alleging fraud. If an attorney commits actual fraud in his dealings with a third party, the fact he did so in the capacity of attorney for a client does not relieve him of liability. (*Goodman* v. *Kennedy, supra,* 18 Cal.3d 335, 346.) While in general an attorney's professional duty of care extends only to dealings with his own client and to intended beneficiaries of the legal work performed, these limitations upon liability for negligence based upon the scope of the attorney's duty do not apply to liability for fraud. (*Ibid.*)

■ Clearly, Rogers & Wells's and Lathrop's clients, the insurance carriers for Mix, would have been entitled to bring their own action for fraud against their former attorneys under the facts alleged in Jackson's second amended complaint, which we deem true for purposes of reviewing the ruling on demurrer. (*Buckaloo* v. *Johnson, supra,* 14 Cal.3d 815, 828.) However, it does not necessarily follow such an action would then be assignable to a third party. To examine whether assignment is proper under these circumstances, several factors must be discussed: The historical distinction between those fraud actions which are assignable, because they involve rights in specific property obtained by fraud or deceit, and those which are not; i.e., those "mere naked right[s] of action for fraud and deceit," which have never been held assignable. (*Goodley, supra,* 62 Cal.App.3d 389, 398, fn. 12.) Further, because this area of the law is heavily laden with policy considerations, we must address whether attorney fraud allegations are exempt from the policies previously discussed which prohibit the assignment of attorney negligence causes of action.

A

Assignment of Fraud Causes of Action

An early line of Supreme Court cases drew a distinction between fraud causes of action which involved a deprivation of a specific item of the plaintiff's property, and those which instead were a "mere naked right of action for fraud and deceit." (*Jackson* v. *Deauville Holding Co.* (1933) 219 Cal. 498, 502 [27 P.2d 643], citing *Wikstrom* v. *Yolo Fliers Club* (1929) 206 Cal. 461 [274 P. 959] and *McCord* v. *Martin* (1917) 34 Cal.App. 129 [166 P. 1014].) Where specific property of a plaintiff's assignors was fraudulently acquired and the plaintiff's estate thus diminished by fraud or deceit, assignment was allowed. In such a case, the cause of action was found to be connected with some property or thing which itself had a legal existence and value independent of the right to sue for fraud and was thus a tangible item which could be sought to be recovered in the lawsuit. (*Ibid.*) Converse-

ly, where the fraud allegations could not be traced to a particular depriva-
tion of particular property, assignment was deemed improper.

In Jackson's opening brief, we are told the claimed fraud on the part of
Rogers & Wells et al. may be summarized as having taken place through
"two courses of egregious misconduct": "(1) [T]he intentional manipulation
of the insurance carriers and Mix by means of contradictory false represen-
tations, concealments and omissions concerning the sum and substance of
deposition and trial testimony and documentary evidence in the Mix action,
the existence of testimonial and documentary evidence and governing prin-
ciples of law which were adverse to Mix's defense, the exposure of Mix to
liability and the probability of winning the Mix action, and (2) the inten-
tional performance of unnecessary, unreasonable and improper legal and
related services in the Mix action."

In addition to the above pleaded facts, our examination of the pleading
shows numerous references to the attorney-client relationship existing be-
tween the carriers and the attorney defendants, and allegations that specific
misconduct, including failure to settle the case, occurred throughout the
course of that legal representation.[6] It is thus fair to conclude all of the
above summarized allegations, and the substance of the second amended
complaint, arose entirely out of and were intrinsic to the attorney-client
relationship between the carriers and their law firm. The conduct alleged,
representations regarding evidence and the state of the law, evaluations of
the probability the client would prevail in the action, and allocation of
resources to the client's case, all constitute "judgment calls" within the
scope of the attorney's legal representation of the client.

Therefore, if we were to uphold a characterization of these allegations as
grounded in fraud rather than in classic attorney malpractice or negligence
and thus assignable, we would be requiring a trial court to second-guess the
attorney's professional evaluations communicated to the client and the stra-
tegic choices made in the past in a confidential relationship in which the
current plaintiff had no part, and was in fact adversary to the attorney-
client partnership. Such an attenuated theory of liability would lead to proof
problems and would work mischief in the already busy field of legal mal-
practice litigation.

---

[6] With regard to allegations of failure to settle a case, the court in *Purdy* v. *Pacific Automo-
bile Ins. Co., supra,* 157 Cal.App.3d 59, 77-78, noted that even where an attorney advises a
client to settle, he or she has no power to compel the client to act accordingly; hence, no caus-
al connection can be found between advice given or not given and the actual harm incurred.
The lack of such a causal connection was fatal to the legal malpractice claim before that
court. Here, since Jackson has denominated his causes of action fraud and breach of contract,
this point is not determinative, since the question before us is whether assignment was prop-
er.

While we deem true, as we must, the allegation unnecessary services were rendered and the client charged for the same, we hold only the carrier-clients would have the right to raise such a claim, since disputed billings which arose from an ongoing attorney-client relationship are not sufficiently analogous to a specific, identifiable piece of property such as was found necessary in *Jackson* v. *Deauville Holding Co., supra,* 219 Cal. 498, 502, to support the assignability of a cause of action for fraud. This fee dispute has no existence independent of the cause of action for fraud and thus does not have the requisite separate legal identity to permit its assignment. (*Ibid.*; see this court's discussion in *United States Fidelity & Guaranty Co.* v. *Superior Court* (1988) 204 Cal.App.3d 1513, 1526-1530 [252 Cal.Rptr. 320], of the related problem of determining fee disputes between a carrier and *Cumis* counsel (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913]).)

We thus conclude the language of the second amended complaint fails to provide a basis to distinguish Jackson's allegations of Rogers & Wells et al.'s misconduct from the classic attorney malpractice cause of action.[7] Policy considerations also mandate against a finding of assignability, as will next be discussed.

## B

### Public Policy Factors

The court in *Goodley* explained the basis for its decision as: "It is the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship that invoke public policy considerations in our conclusion that malpractice claims should not be subject to assignment." (*Goodley, supra,* 62 Cal.App.3d at p. 397.)

In response to Jackson's arguments on appeal, Rogers & Wells et al. point to several important policy considerations which would be implicated by the allowance of freely assignable malpractice causes of action, however labeled. Among these are the need to preserve the element of trust between attorney and client, which could be impaired if the attorney perceives a future threat of the client's assignment to a stranger or adversary of a legal malpractice claim. Similarly, counsel might be discouraged from pursuing vigorous advocacy on behalf of his or her client if that advocacy might

---

[7] The facts before us do not squarely present and we do not decide the question of whether a fraud cause of action against an attorney by a client, arising out of the obtaining of specifically identifiable money or property (e.g., trust funds) by fraud, would be assignable to a stranger.

alienate the adversary, who might someday be motivated to sue the attorney for legal malpractice under an assignment of rights. An attorney might also seek to please an employer-insurer at the expense of the insured's best interest, if the attorney fears the employer might someday turn over its malpractice cause of action to a third party. Finally, if malpractice claims could be bought and sold, the inevitable result would be raised malpractice insurance premiums.

Under the peculiar facts of this case, all these policy considerations point toward the disallowance of assignment of the causes of action pleaded. In this action, Jackson, who formerly sued the carriers for bad faith insurance practices, obtained their settlement and released them from liability apparently on condition they deliver to him their rights, if any, against their former attorneys. The carriers never filed suit against the attorneys, and it is unknown whether they would have done so on their own behalf or whether they evaluate these claims as meritorious or simply saleable.[8] Such facts provide obvious warning signs that even unmeritorious claims might be assigned by an insurer merely as bargaining chips to dissuade a third party claimant from further pursuit of the insurer on currently allowable bad faith theories.[9] Particularly in cases with a history of animosity between the adversaries in the underlying lawsuit, revenge or other impermissible considerations might become factors.

Further, Jackson's position in this lawsuit is fraught with illogic. By claiming as an assignee of the carriers that the attorney defendants should have settled his action against Mix earlier, he in effect claims his own recovery by means of judgment after court trial should have been diminished in the amount by which it exceeds those settlement offers which allegedly should have been accepted. Jackson then seeks to recover damages, in addition to his own judgment, for the alleged malpractice which allowed him to obtain that large judgment.

All of the above reasons, including our determination the gravamen of Jackson's fraud cause of action is actually legal malpractice, lead to our conclusion this cause of action was not assignable under applicable authority.

---

[8] See *Goldfisher* v. *Superior Court, supra,* 133 Cal.App.3d 12, 22, where the court said in dicta in reference to cross-complaints for indemnity between successive attorneys, "Differences between lawyer and client respecting malpractice should be limited to themselves."

[9] See *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 304-305 [250 Cal.Rptr. 116, 758 P.2d 58], in which the Supreme Court stated its decision overruling *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], did not prevent the pursuit of traditional theories against an insurer, such as fraud or infliction of emotional distress.

Before discussing the contractual issues presented, specifically whether the "intentional breach of contract" claim is assignable and whether the assignment itself constituted an illegal contract, we note that Jackson's challenges to the order striking the punitive damages claim fail along with the fraud cause of action. ██ No further discussion of this point is necessary since the Supreme Court has adopted without limitation the rule stated in *French* v. *Orange County Inv. Corp.* (1932) 125 Cal.App. 587, 591 [13 P.2d 1046], that punitive damages claims, because personal to the one injured, are not assignable. (*People* v. *Superior Court* (*Jayhill Corp.*) (1973) 9 Cal.3d 283, 287 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191]; *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 942 [132 Cal.Rptr. 424, 553 P.2d 584].)[10]

## III

### Breach of Contract Claim

██ As noted above, legal malpractice constitutes both a tort and a breach of contract. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d 176, 180-181.) Jackson contends his breach of contract cause of action is different from the norm in that it alleges intentional conduct caused the breach, rather than negligent performance. (See 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 791, p. 715.) In either case, the modern trend in analyzing legal malpractice causes of action is to blur the contract-tort distinction, which has been found not to be useful in this context. (See, e.g., *Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 426-429, 434 [173 Cal.Rptr. 917], holding Code Civ. Proc., § 340.6 applies to both breach of contract and tort legal malpractice actions. See also *Perry* v. *Robertson* (1988) 201 Cal.App.3d 333, 335, fn. 1 [247 Cal.Rptr. 74], referring to the tort/contract distinction as "purely one of legal perspective," with an accompanying visual aid (drawing taken from Wittgenstein, Philosophical Investigations (Blackwell ed. 1953) pt. II, p. 194e).) Thus, the same public policy factors which led us to conclude Jackson's fraud cause of action had not been properly assigned to him also apply to bar his prosecution of this breach of contract claim. We therefore need not reach the alternative arguments raised on demurrer.[11]

In conclusion, we note the assignment documents themselves list legal malpractice claims as among those assigned. ██ Whether a contract is

[10] In light of the above conclusions, we need not reach the issue of whether certain elements of fraud (i.e., representation and justifiable reliance) were adequately pled.

[11] These arguments were that Jackson inadequately pled both the terms of the underlying retainer contract between the carriers and Rogers & Wells, and the carriers' excuse for non-performance in not paying all the fees billed.

illegal or contrary to public policy is a question of law to be determined from the circumstances of each particular case. (*Kallen* v. *Delug* (1984) 157 Cal.App.3d 940, 951 [203 Cal.Rptr. 879].) The trial court, in sustaining the demurrer without leave to amend, concluded this assignment was illegal. In light of *Goodley,* which was on the books when the assignment contract was entered into, this conclusion was correct.

## IV

### Disposition

The judgment of dismissal is affirmed.

Wiener, Acting P. J., and Benke, J., concurred.