Filed 12/10/20  Lichtenberger v. Hunt, Ortmann, Palffy etc. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GRETCHEN D. LICHTENBERGER, | B297569 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC058175) |
| v. | |
| HUNT, ORTMANN, PALFFY, NIEVES, DARLING & MAH, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Stephen P. Pfahler, Judge.  Affirmed.

Gretchen D. Lichtenberger, in pro. per., for Plaintiff and Appellant.

Clark Hill, Richard H. Nakamura Jr., David Brandon and Renee Diaz for Defendants and Respondents.

* * * * * *

A paralegal hired by a law firm to assist with enforcing a default judgment agreed to be paid by the client on a contingency basis from the proceeds of the judgment. When the judgment was later vacated due to what she alleges was malpractice by the law firm, she sued the law firm and two of its lawyers for malpractice and 11 other claims all premised on that malpractice. The trial court dismissed her lawsuit on the grounds that she, as a freelancer working to assist the law firm in its collection efforts, could not sue for malpractice. We agree, and affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**I. Facts[1]**

**A. *Lawsuit prior to plaintiff's involvement***

Five individuals and four companies signed a promissory note to Harmanjit Singh (Singh). Among other things, the note provided that Singh was entitled to attorney fees if he prevailed in a lawsuit to collect on that note.

When the debtors defaulted on the note, Singh retained the law firm of Hunt, Ortmann, Palffy, Nieves, Darling & Mah, Inc. (the law firm) to represent him. Lawyers Dustin Taylor Lozano

---

1 We draw these facts from the operative second amended complaint except where its allegations are contradicted by (1) allegations in the verified original and first amended complaints (*Webb v. City of Riverside* (2018) 23 Cal.App.5th 244, 256 (*Webb*)), or (2) documents appended to the second amended complaint (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604).

We also disregard the allegations that lawyers have a legal duty to assure that paralegals get paid and that lawyers are liable to paralegals for malpractice because these allegations are, at bottom, legal conclusions. (E.g., *Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1140 ["a legal conclusion . . . is neither binding nor 'controlling'"].)

(Lozano) and Aaron J. Flores (Flores) were assigned to handle the case for the law firm.

While represented by the law firm, Singh sued the five individuals and four entities on the unpaid promissory note in Los Angeles Superior Court; the case was *Singh v. Apheta LLC*, Case No. SC123069 (the *Apheta* case). In the last quarter of 2014, eight of the defendants did not answer the complaint and Singh requested—and obtained—an entry of default against each.

On January 22, 2016, Singh—while still represented by the law firm—filed a first amended complaint in the *Apheta* case. However, the law firm did not serve any of the eight defaulted defendants with the amended complaint.

On October 20, 2016, the trial court in the *Apheta* case held a default prove-up hearing based on the original complaint even though, by virtue of the filing of the first amended complaint, the original complaint was no longer the operative pleading.

On October 28, 2016, the trial court entered a default judgment against the eight defaulted defendants in the *Apheta* case. In that judgment, the court awarded Singh $214,906.08 on the promissory note, which included $69,660.78 in attorney fees. By that time, the law firm had billed Singh approximately $150,000 in fees.

B. *Plaintiff's work for the law firm*

On November 3, 2016, the law firm contacted Gretchen D. Lichtenberger (plaintiff) to assist in the effort to collect on the newly entered default judgment.[2] Plaintiff is an experienced

---

[2]  The second amended complaint inconsistently alleges that Lozano reached out to plaintiff nearly two years earlier—in December 2014 before the default judgment was entered.

paralegal and registered process server who specializes in such collection work, and who had worked with the law firm and Lozano on prior matters.

Plaintiff agreed to assist the law firm in its effort to collect on the default judgment in the *Apheta* case. Rather than bill the law firm for "her paralegal services" at her hourly rate, plaintiff "directly" contracted with Singh to perform "all legal support services necessary" at the law firm's direction and agreed to be paid by Singh, on a contingency basis, "upon recovery of money in satisfaction of the [default] judgment."[3] Plaintiff and Singh signed a written *Legal Services Agreement* in mid-December 2016.[4] Plaintiff agreed to work on a deferred and contingency basis because the law firm either "could"—or, alternatively, because Lozano had orally promised her he "would"—file a motion for attorney fees in connection with enforcing the default judgment that asked for a multiplier of the fees incurred, including her fees.

In her work on the *Apheta* case, plaintiff incurred a total of $92,147 in fees and costs comprised of her paralegal work, her "process serving" work, and her out-of-pocket costs.

---

[3] The second amended complaint inconsistently alleges that plaintiff's contract with Singh only covers her "paralegal" work, but not her out-of-pocket costs or her process service work, which she inexplicably alleges did not "benefit" Singh at all.

[4] The second amended complaint inconsistently alleges that Singh signed the *Legal Services Agreement* in March 2017 but backdated it to December 2016, the net effect of which is to take all of the services plaintiff provided between December 2016 and March 2017 outside of that contract and to make the law firm liable for those fees as part of an implied or express contract between the law firm and plaintiff.

**C.** *The default judgment unravels*

In April 2017, four of the defendants named in the default judgment moved to set that judgment aside on the ground that they were never served with the first amended complaint.

On June 30, 2017, the trial court set aside the default judgment in the *Apheta* case for those four defendants.

## II. Procedural Background

**A.** *The original complaint, first amended complaint and demurrer*

On December 19, 2017, plaintiff filed a verified complaint suing Singh for declaratory judgment.

On May 17, 2018, plaintiff filed a verified first amended complaint that added as defendants the law firm, Lozano and Flores (collectively, the lawyer defendants) and added 11 new causes of action.

The 12 causes of action alleged in the first amended complaint fall into three general groups.

The first group consists of plaintiff's claims for malpractice, unfair business practices, and tortious inference with her *Legal Services Agreement* with Singh. In one or all of these claims, plaintiff alleges what boil down to eight "legal blunder[s]" committed by the lawyer defendants in their representation of Singh in the *Apheta* case—namely, that the lawyer defendants were negligent in (1) filing the first amended complaint without serving the eight defaulted defendants, likely due to insufficient legal research, (2) applying for only $69,660.78 in attorney fees at the default prove-up hearing rather than the $150,000 they had actually incurred, (3) not competently opposing the motion to set aside the default judgment, primarily due to their failure to follow plaintiff's advice or use the legal brief she drafted, (4) not filing a motion to vacate the order setting aside the default

5

judgment, which plaintiff suggested, (5) not pursuing collection efforts and not seeking collection-related attorney fees against the four defendants who remained in default, (6) not negotiating a settlement for Singh in the *Apheta* case, (7) not properly supervising Lozano, and (8) charging Singh unconscionable and "ridiculous[]" fees and "inflat[ing] their bill[s] to [an] extreme."

The second group consists of plaintiff's claims for theft by false pretenses, fraud and intentional deceit, constructive fraud, and negligent misrepresentation. These fraud-related claims are based upon the lawyer defendants' (1) failure to disclose to her the invalidity of the prior default judgment, which was "based on" the lawyer defendants' "multiple legal mistakes" and "negligence" "in the *Apheta*" case, or (2) failure to file a motion for attorney fees in order to recover the cost of plaintiff's services, plus a multiplier. The lawyer defendants' nondisclosure is what induced plaintiff to sign the *Legal Services Agreement* with Singh.

The third group consists of plaintiff's contract-based claims—namely, (1) for a declaration that the lawyer defendants were "fully responsible" for her fees and costs, (2) for breach of an "implied contract" with Lozano, based on their past billing practice, which was breached when the lawyer defendants committed malpractice and did not file a motion for attorney fees with a multiplier, (3) for breach of the implied covenant of good faith and fair dealing attendant to an "implied contract" plaintiff had with the lawyer defendants, which was breached when the lawyer defendants did not "finish negotiating a settlement" "for Singh" in the *Apheta* case, (4) for promissory estoppel, based on the lawyer defendants' promise to "claim all [her] fees and costs in the *Apheta* [m]atter," and (5) for quantum meruit based on an "implied contract"—and, quixotically, an "express contract"—she

6

had with the lawyer defendants to compensate her for all "services . . . performed."

In July 2018, the lawyer defendants demurred to the first amended complaint. Following briefing and a hearing, the trial court in October 2018 sustained the demurrer as to all claims, reasoning that the "gravamen" of all of plaintiff's claims against the lawyer defendants was "legal malpractice" in their representation of Singh in the *Apheta* case, which plaintiff had no standing to pursue because she was neither the "client" nor an "intended beneficiary" of Singh's contract with the lawyer defendants for legal services. The court also identified a number of alternative grounds for sustaining the demurrer as to individual claims. Although the court did not grant leave to amend for any of the claims in the first two groups or as to plaintiff's claim for declaratory relief against the lawyer defendants, the court granted her leave to amend as to the breach of contract, breach of the implied covenant of good faith, promissory estoppel and quantum meruit claims.

**B.** ***The second amended complaint and demurrer***

In November 2018, plaintiff filed a verified second amended complaint that re-alleged a breach of contract claim against Lozano, and re-alleged a breach of the implied covenant of good faith and fair dealing claim, a promissory estoppel claim and a quantum meruit claim against all of the lawyer defendants. As detailed in the footnotes set forth above, many of the factual allegations in the second amended complaint were inconsistent with the factual allegations in the verified original and first amended complaints. By virtue of these new factual allegations, the second amended complaint sought to narrow the scope of Singh's responsibility for plaintiff's fees under the *Legal Services*

7

*Agreement* so as to expand the scope of the lawyer defendants' liability for those fees. Specifically, the second amended complaint alleged that the *Legal Services Agreement* only covered plaintiff's fees incurred when "enforc[ing] the [default] judgment" in the *Apheta* case and not "defend[ing] th[at] judgment," that the *Legal Services Agreement* only covered her "paralegal" work and not process serving fees or her out-of-pocket costs, and that the *Legal Services Agreement* only covered her services after it was signed—all of which meant that the lawyer defendants were liable (on inconsistent theories of implied and express contract) (i) for *all* of her process service work and out-of-pocket costs and (ii) for all of her paralegal work prior to the *Legal Services Agreement* and after the motion to set aside the default judgment was filed.

In December 2018, the lawyer defendants again demurred. Following another full round of briefing and a hearing, the trial court sustained the demurrer to all claims against the lawyer defendants in the second amended complaint.[5] In addition to concluding that "[t]he gravamen of the entire Second Amended Complaint . . . as against [the lawyer defendants] remains legal malpractice," the court identified a number of alternative grounds for sustaining the demurrer as to individual claims. Because plaintiff "fail[ed] to indicate how she [could] cure the

---

[5] The lawyer defendants had also demurred to the declaratory relief claim because plaintiff exceeded the scope of the trial court's first demurrer ruling by amending that claim in the second amended complaint; however, because that claim was asserted against Singh and not against the lawyer defendants, the trial court ruled that the lawyer defendants lacked standing to demur.

8

defects in her pleading," the court sustained the demurrer without leave to amend.

### C. *Judgment, order for costs and appeal*

After the trial court entered judgment dismissing plaintiff's second amended complaint against the lawyer defendants, and after the court awarded the lawyer defendants $1,674.69 in costs, plaintiff filed this timely appeal.[6]

## DISCUSSION

In this appeal, plaintiff argues that the trial court erred (1) in sustaining the demurrers to the first and second amended complaints, (2) in denying her motion to deem admitted the 206 requests for admission she served on the lawyer defendants, and (3) in awarding the lawyer defendants $150 in nonrefundable jury fees as costs. We will address the first and third issues because our resolution of the first renders the second moot. (See *Hood v. Hacienda La Puente Unified Sch. Dist.* (1998) 65 Cal.App.4th 435, 437 [affirming order of dismissal on demurrer renders antecedent discovery ruling moot].)

## I. Demurrer

"In reviewing a trial court's order sustaining a demurrer without leave to amend, we must ask (1) whether the demurrer was properly sustained, and (2) whether leave to amend was properly denied." (*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1335.) The first question requires us to

---

[6] Although plaintiff's declaratory relief against Singh remains pending and is set for trial in 2021, we have jurisdiction over this appeal because the order sustaining the demurrer without leave to amend renders the judgment final as between plaintiff and the lawyer defendants. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 437; *Tinsley v. Palo Alto Unified School Dist.* (1979) 91 Cal.App.3d 871, 880.)

"independently evaluate whether the operative complaint states facts sufficient to state a cause of action" (*Alborzian v. JPMorgan Chase Bank, N.A.* (2015) 235 Cal.App.4th 29, 34), and in so doing, we accept as true "all material facts properly pled" in that complaint, although we discount and ignore pled facts that are contrary to those pled in prior complaints or contrary to documents subject to judicial notice (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Webb, supra*, 23 Cal.App.5th at p. 256). The second question "requires us to decide whether ""there is a reasonable possibility that the defect [in the operative complaint] can be cured by amendment."""" (*McClain v. Sav-On Drugs* (2017) 9 Cal.App.5th 684, 695, affd. (2019) 6 Cal.5th 951.) Because plaintiff proffers no suggestion on how to further amend her complaint and because we perceive no viable way to do so, the propriety of the dismissal order in this case turns entirely on whether her complaint states one or more viable causes of action.

We independently agree with the trial court that none of the 12 causes of action plaintiff alleges against the lawyer defendants is viable because (1) those 12 claims are all premised on the lawyer defendants' commission of legal malpractice while representing Singh in the *Apheta* case, and (2) the lawyer defendants' duty of competent representation is owed to Singh, and not *to plaintiff*.[7]

### A. *Plaintiff's claims are all premised on the attorney defendants' alleged malpractice*

In evaluating whether a plaintiff has stated a claim against a particular defendant, what matters is the "gravamen" of that

---

[7] This conclusion obviates any need to evaluate the trial court's alternative grounds for sustaining the demurrers.

10

claim—not its label.  (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1196; *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1595.)  "'The gravamen, or essential nature . . . of a cause of action is determined by the primary right alleged to have been violated . . .' [Citation.]" (*Chen v. Berenjian* (2019) 33 Cal.App.5th 811, 820-821.)  "[T]he primary right" is, in turn, defined as the "plaintiff's right to be free from the particular injury" or "harm" "suffered," no matter which legal theory is being asserted or which remedy is being sought to redress that injury or harm.  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681 (*Crowley*); *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797-798.)  Because "'the invasion of one primary right gives rise to a single cause of action'" (*Bay Cities Paving & Grading v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860 (*Bay Cities*), quoting *Slater v. Blackwood* (1975) 15 Cal.3d 791, 795), the violation of a single primary right cannot be split into multiple claims in a single lawsuit or split across multiple lawsuits (*Crowley*, at p. 681; *Bay Cities*, at p. 860).

The primary right at issue in a claim for legal malpractice is the right not to be injured by "the failure of an attorney 'to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise . . . .'"  (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 180-181; *Bay Cities*, *supra*, 5 Cal.4th at p. 860 ["primary right" underlying malpractice claim is "the right to be free of negligence by [one's own] attorney"]; *Khodayari v. Mashburn* (2011) 200 Cal.App.4th 1184, 1191 [same].)

All three groups of claims asserted by plaintiff in the first and second amended complaints involve the invasion of the same primary right—that is, plaintiff's purported right not to be

11

injured by the lawyer defendants' negligence in representing Singh in the *Apheta* case. (*Bay Cities*, *supra*, 5 Cal.4th at p. 860.) The malpractice, unlawful business practices, and tortious interference claims are all directly premised upon one or more "legal blunder[s]" or excessive billing practices committed by the lawyer defendants. The fraud claims are each based on the lawyer defendants' failure to disclose to plaintiff their prior malpractice in representing Singh or their concurrent malpractice in not seeking attorney fees (plus paralegal fees) with a multiplier. And the breach underlying each of the contract-based claims, including the breach of an equitable duty to compensate plaintiff in the absence of a contract, was caused or necessitated by the lawyer defendants' allegedly deficient representation of Singh. As to each of these claims, plaintiff is effectively saying, "I did not get paid because the lawyer defendants committed malpractice when they were representing Singh in the *Apheta* case." The alleged malpractice by the lawyer defendants is the linchpin of each of plaintiff's claims: If the malpractice claim fails, the rest of her claims necessarily fail. (See *Lynch v. Warwick* (2002) 95 Cal.App.4th 267, 273-274 [breach of contract claim fails when it is based on malpractice, and malpractice claim is invalid]; *Kracht v. Perrin* (1990) 219 Cal.App.3d 1019, 1022-1023 & fn. 3 [same, as to constructive fraud claim]; *Jackson v. Rogers & Wells* (1989) 210 Cal.App.3d 336, 349 (*Jackson*); cf. *Brooks v. Shemaria* (2006) 144 Cal.App.4th 434, 440-441 [breach of contract claim survives, despite invalid malpractice claim, because it is based on "the right to be billed in accordance with the terms of the retainer agreement" irrespective of any attorney negligence].)

Plaintiff resists this conclusion with three arguments.

First, she notes that plaintiffs are generally allowed to plead alternative theories, such that it is wrong to conclude that her legal malpractice claim "automatically subsumes all other causes of action." Although a plaintiff is generally free to plead alternative—and even legally inconsistent—legal theories in a complaint (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1222-1223; *Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 944-945), she may not do so where, as here and as explained above, the purportedly alternative theories involve an invasion of the same primary right (*Bay Cities*, *supra*, 5 Cal.4th at p. 860). Further, our conclusion that all of plaintiff's claims arise from the same primary right not to be injured by the lawyer defendants' malpractice is derived from our examination of the primary right underlying plaintiff's malpractice claim and of the specific allegations underlying each of plaintiff's other claims; we did not rely on any notion that malpractice "automatically subsumes" other claims.

Second, plaintiff contends that her fraud claims, at a minimum, arise from a primary right other than the right not to be harmed by an attorney's malpractice. For support, she cites *Jackson*, *supra*, 210 Cal.App.3d at pp. 344-345 and *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 346 (*Goodman*). *Jackson* and *Goodman* merely held that an attorney may be sued for fraud when he or she makes fraudulent statements to third parties that are unrelated to his or her competence as an attorney. (Accord, *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 69-70.) But these cases are not relevant where, as here, the alleged fraudulent nondisclosure is the failure to disclose one's malpractice, which turns on

13

whether there was, in fact, malpractice. In such cases, as *Jackson* itself held, the fraud claim involves the same primary right as the malpractice claim. (*Jackson*, at pp. 346-347.)

Third, plaintiff asserts that her quantum meruit claim, at a minimum, arises from a primary right other than attorney malpractice. We reject this assertion for several reasons. To begin, the quantum meruit claim plaintiff has pled is necessarily premised on the lawyer defendants' malpractice: "But for [the lawyer defendants'] failure to act as any prudent attorney would act," she alleges, "[plaintiff] would have been paid in full by now" (and maybe more, if a multiplier were applied). Further, quantum meruit, as an equitable remedy, is unavailable "where it would frustrate the law or public policy" (*Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 794), and for the reasons discussed below, allowing plaintiff to recover in quantum meruit in this case would effectively turn lawyers into guarantors of payment for their freelance contractors, even where, as here, the contractors have signed written contracts with others for compensation for those services.

### B. *Plaintiff cannot state a claim for malpractice against the attorneys who retained her*

To state a claim for legal malpractice, a plaintiff must allege that the lawyer owed her a duty and breached that duty by substandard representation. (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1999.) The viability of plaintiff's claim for legal malpractice—and, by extension, all her remaining claims premised on malpractice—turns on whether the lawyer defendants owed *her* a duty to perform competently. (*Goldberg v. Frye* (1990) 217 Cal.App.3d 1258, 1267 ["Absent duty there can be no breach and no negligence" and malpractice].) The question of duty is ultimately a question of public policy, and hence a

14

question of law we review de novo.  (*Goodman*, *supra*, 18 Cal.3d at p. 342; *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 885.)

As a general rule, a lawyer owes a duty of competence and loyalty only to the client who retains that lawyer.  (*Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 529-530.)  This is because, in the ordinary case, the client and the lawyer have signed a retainer agreement and thus share a privity of contract.  (*Buckley v. Gray* (1895) 110 Cal. 339, 342-343, overruled in part on other grounds as stated in *Lucas v. Hamm* (1961) 56 Cal.2d 583 (*Lucas*); *Giacometti v. Aulla, LLC* (2010) 187 Cal.App.4th 1133, 1137 ["The general rule is that privity of contract is a requisite to a professional negligence claim"].)

This general rule is not without its exceptions.  Courts have recognized that a lawyer may owe a duty of competence and loyalty to third parties other than the client when (1) the third party is the intended beneficiary of the legal work performed by the attorney, either because (a) the lawyer and client have expressly designated that third party as an intended beneficiary in the retainer agreement (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 406, fn. 16), or (b) "the very nature" of the work the attorney was retained to perform for the client is for the benefit of the third party (*Goodman*, *supra*, 18 Cal.3d at p. 342; *Lucas*, *supra*, 56 Cal.2d at pp. 589-891 [applying exception to named beneficiary in a will]; *Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 323-324 [same]; *Bucquet v. Livingston* (1976) 57 Cal.App.3d 914, 917-923 [applying exception to trust beneficiaries]); or (2) the attorney and client intend that the third party is to rely on the attorney's legal work (*Goodman*, at p. 343, fn. 4 [so noting]; *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*

15

(1976) 57 Cal.App.3d 104, 111 [same]). However, the fact that a third party would or could benefit from the lawyer's competent representation of the client is *not* enough to extend the duty of competence and loyalty to that third party. (*B.L.M. v. Sabo & Deitsch* (1997) 55 Cal.App.4th 823, 832; see also *Moore v. Anderson Zeigler Disharoon Gallagher & Gray* (2003) 109 Cal.App.4th 1287, 1294-1295 (*Moore*) [attorney does not owe duty to possible will beneficiary who might benefit from attorney's duty to ensure that testator is competent to execute will]; *Goodman*, at p. 339 [attorney representing stock sellers does not owe duty to the buyers of that stock to advise them regarding consequences of stock transaction]; *St. Paul Title Co. v. Meier* (1986) 181 Cal.App.3d 948, 951-952 [attorney representing buyer in real estate transaction does not owe duty to escrow company in drafting escrow instructions].)

Plaintiff does not fall into either of these exceptions. She *is* not—and, indeed, cannot be—the intended beneficiary of the attorney-client relationship between the lawyer defendants and Singh. She concedes she is not expressly named as an intended beneficiary in the retainer agreement. Nor *could* she be, either as a matter of logic or basic temporal mechanics. That is because Singh retained the lawyer defendants to represent him back in 2014, more than two years *before* plaintiff was brought on to assist in the effort to collect on the judgment. Plaintiff was indisputably not an intended beneficiary of the 2014 retainer agreement. Nor did Singh retain the lawyer defendants with the intent of having third parties like plaintiff—that is, paralegals hired to help with collection efforts that might or might not be necessary at some point in the future—rely on the lawyer defendants' work. At most, plaintiff would have financially

16

benefitted if the lawyer defendants' actions had not left the default judgment open to successful attack, but that is not enough to create a duty.

Plaintiff nevertheless argues that a lawyer has a "duty to assure" that any and all freelance professionals who assist a lawyer in representing a client are "compensated for [their] work." Plaintiff offers two internally inconsistent rationales for her proffered duty—namely, that (1) the freelancer's work puts the freelancer "in privity with the client," and (2) the freelancer's work renders the freelancer "the practical and legal equivalent of a 'client.'" This argument invites us to recognize a new duty upon lawyers to assure that the professionals with whom they sub-contract are fully compensated notwithstanding whatever other payment arrangements those professionals make.

This is an invitation we respectfully decline.

To be sure, courts have the power to expand the duty owed by lawyers and to thereby expand the universe of plaintiffs who might be able to sue for legal malpractice. "'The determination whether in a specific case the [lawyer] will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors.'" (*Bily*, *supra*, 3 Cal.4th at p. 397.) When it comes to expanding the scope of the duty not to be negligent in practicing law to third parties, the relevant factors are (1) "the extent to which the transaction was intended to affect the [third party] plaintiff," (2) whether "the recognition of" a duty—and liability—to the third-party plaintiff "would impose an undue burden on the legal profession," (3) "the likelihood that imposition of liability might interfere with the attorney's ethical duties to the client," (4) "the foreseeability of harm to" the third-party plaintiff, (5) "the degree of certainty that the [third-party]

17

plaintiff [has] suffered injury," (6) "the closeness of the connection between the [attorney's] conduct and the injury suffered," (7) "the moral blame attached to the [attorney's] conduct," and (8) "the policy of preventing future harm." (*Ibid.*; *Lucas*, *supra*, 56 Cal.2d at p. 589; *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 832 (*Berg & Berg*); *Chang v. Lederman* (2009) 172 Cal.App.4th 67, 77, 83, fn. 7; *Moore*, *supra*, 109 Cal.App.4th at pp. 1294-1295.)

We nevertheless decline to exercise our authority to create a duty that would require lawyers to ensure that the freelance professionals they hire to assist them in representing clients are fully compensated for their work. We reach this conclusion for four reasons.

First, the underlying transaction between lawyer and client that gives rise to the need to hire freelance professionals is in no way intended to benefit those professionals.

Second, imposing a duty upon lawyers to assure that the freelance professionals they retain are fully compensated—even when the professionals, like plaintiff herself, may have willingly agreed to alternative payment arrangements—effectively turns lawyers into guarantors. A lawyer faced with the knowledge that he or she is the ultimate backstop for the payment of all fees incurred by freelance professionals may prompt the lawyer to make different tactical decisions (e.g., not hiring a freelance professional, limiting their billable hours) that harm the client's interest. At a minimum, these considerations divert a lawyer's attention away from his or her ultimate duty of loyalty to the client; at worst, they divide the lawyer's loyalty. Neither is acceptable. (*Goodman*, *supra*, 18 Cal.3d at p. 344 [duty that "'would prevent [the lawyer] from devoting his [or her] entire

18

energies to his [or her] client's interests'" is undesirable]; *Bily*, *supra*, 3 Cal.4th at p. 411, fn. 18 [same, as to duty that "divert[s] a lawyer's attentions from the service of the client"]; *Berg & Berg*, *supra*, 131 Cal.App.4th at p. 832 [duty that would "put [lawyer] in an untenable and conflicted ethical position vis-à-vis [his or her] own client" is undesirable]; see generally *Fireman's Fund Ins. Co. v. McDonald, Hecht & Solberg* (1994) 30 Cal.App.4th 1373, 1379 [noting attorney's "duty of undivided loyalty . . . in representing the client"].)

Third, creating this new duty does not give the lawyer any greater incentive to perform competently for his or her client, as the threat of a malpractice action (or ethical sanction) already provides such incentive. (Accord, *Bily*, *supra*, 3 Cal.4th at p. 404.)

Lastly, the recognition of this duty would still require the freelance professional to prove malpractice and thus may lead to inconsistent verdicts should a jury find that the same acts by the lawyer were *not* negligent vis-à-vis the client, but were negligent vis-à-vis the paralegal.

These considerations are no doubt why courts have held that a prior attorney cannot sue his former client's successor counsel for malpractice when the successor's poor representation reduced the prior lawyer's shared fee (*Mason v. Levy & Van Bourg* (1978) 77 Cal.App.3d 60, 67-68), and why freelance accountants cannot sue the attorney who hired them for malpractice in not reviewing their work closely enough (*Mattco Forge, Inc. v. Arthur Young & Co.* (1995) 38 Cal.App.4th 1337, 1356-1357).

## II. Motion to Tax $150 Nonrefundable Jury Fee

The prevailing party in a lawsuit is entitled to its costs, which include jury fees.  (Code Civ. Proc., §§ 1032, subd. (b),

19

1033.5, subd. (a)(1).)  Here, after the trial court sustained the demurrer to the second amended complaint without leave to amend and entered a judgment of dismissal, the lawyer defendants sought, among other costs, $150 in nonrefundable jury fees.  Plaintiff moved to tax this cost on the ground that the lawyer defendants had the right to apply for a refund of that fee, and thus should not be entitled to collect it from her.  The trial court denied plaintiff's motion to tax that cost.  We review the denial of a motion to tax costs for an abuse of discretion.  (*Gibson v. Bobroff* (1996) 49 Cal.App.4th 1202, 1209.)

The trial court did not abuse its discretion in requiring plaintiff to pay the $150 in nonrefundable jury fee as costs because plaintiff's argument to the contrary is utterly frivolous. Code of Civil Procedure section 631, subdivision (b) requires that at least one party to a civil case "pay a nonrefundable fee" of $150 to "offset the costs to the state of providing juries in civil cases." (Code Civ. Proc., § 631, subd. (b).)  It is undisputed that the lawyer defendants paid that nonrefundable fee.  Plaintiff urges that Code of Civil Procedure 631.3, subdivision (a) provides that "[n]otwithstanding any other law," a party may seek a refund of "deposited jury fees" if "that party waives a jury or obtains a continuance of the trial, or the case is settled" (*id.*, § 631.3, subd. (a)), and from this argues that the lawyer defendants should have sought a refund of their $150 jury fee from the court rather than seeking it as a cost from her.  What plaintiff ignores is that subdivision (c) of section 631.3 specifically says that the "nonrefundable" jury fee requirement set forth in section 631, subdivision (b) "is not subject" to the refund remedy "[in] this section."  (*Id.*, § 631.3, subd. (c).)  This plain language forecloses

20

plaintiff's argument, including her argument that failure to refund the jury fees is "unreasonable."

## DISPOSITION

The judgment, discovery order, and post-judgment order of costs are affirmed.  The lawyer defendants are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

21